Hardy v. Moore.

---

HARDY v. MOORE.

1. **Practice in Supreme Court:** ABSTRACT NOT DENIED TAKEN AS TRUE. Where no additional abstract is filed denying the correctness of the one filed by the appellant, the latter must be taken as true.

2. ————: STRIKING OUT BILL OF EXCEPTIONS. A bill of exceptions will not be stricken from the record on the ground that a paper not properly identified thereby has been interpolated into the transcript and abstract. Such paper might possibly be stricken out on motion.

3. **Recovery of Personal Property:** ACTION AGAINST SHERIFF WHO HAS PARTED WITH POSSESSION. Under § 3239 of the Code, an action for the recovery of personal property wrongfully levied upon and sold by a sheriff to pay another's debt, may be begun and maintained against the sheriff, notwithstanding he may have sold the property and parted with the possession thereof, provided due notice of plaintiff's ownership was served upon him while in possession.

4. **Fraud:** COLLUSION TO COVER TITLE: EVIDENCE. Where it was sought to show that the plaintiff's title to the goods in question was fraudulent, and was set up in order to defeat the creditors of the plaintiff's father, who was alleged to be the real owner, it was not competent to show that the father had attempted to put a portion of his goods beyond the reach of his creditors prior to the time when plaintiff claimed to have acquired an interest in the goods.

VOL. LXII—5

| 62 | 65 |
|----|----|
| 85 | 514 |
| 62 | 65 |
| 95 | 339 |
| 62 | 65 |
| 98 | 605 |
| 62 | 65 |
| 107 | 382 |
| 62 | 65 |
| 111 | 444 |
| 62 | 65 |
| e127 | 265 |
| 127 | 737 |

Hardy v. Moore.

5. ———: ———: ———: DECLARATIONS OF PARTY IN POSSESSION. In such case, the declarations of the father, who was in possession of the goods, though made in the absence of the plaintiff, were material to show in what capacity he was in possession, whether in his own right or as clerk for the plaintiff.

6. ———: ———: ———. In such case, also, judgments against the father were properly admitted in evidence for the purpose of showing that he was in debt, there being some evidence to show that the plaintiff knew of such indebtedness, at the time when he claimed to have acquired an interest in the property.

7. ———: ———: EVIDENCE OF INDEPENDENT TRANSACTION. Where two transactions are claimed to be fraudulent, only one of which, however, is controverted, it must be shown that they are so connected as to evince a common purpose, before the uncontroverted transaction can be admitted in evidence for the purpose of establishing the other to be fraudulent. Much less, in such a case, can an uncontroverted transaction, which is not shown to be fraudulent, and which was too remote in time to raise any presumption of its being connected in purpose with the other, be admitted in evidence.

8. ———: ———: BURDEN OF PROOF: INSTRUCTION. In an action to recover personal property, where the defense was that plaintiff's title was fraudulent, before the burden of proof to show the fraud was cast upon defendant, it was necessary for the plaintiff to show title in himself, and the court in this case properly so instructed.

*Appeal from Cherokee District Court.*

FRIDAY, OCTOBER 19.

ACTION to recover possession of personal property, and damages for its unlawful detention. No bond was executed, and the property was not delivered to the plaintiff. The answer consisted of a general denial, and the defendant pleaded that he was sheriff, and had taken the property under an execution against I. P. Hardy, who in fact was the owner and in possession of the property, and that I. P. Hardy made an arrangement with the plaintiff, whereby he, for the purpose of defrauding his creditors, did business in the name of his son, the plaintiff, and the latter claimed to own the property, but that such claim was fraudulent as against the creditors of I. P. Hardy. Trial by jury, verdict and judgment for the defendant, and plaintiff appeals.

*Joy & Wright* and *Kellogg & Herrick*, for appellant.

*Chase & Taylor* and *J. D. F. Smith*, for appellee.

SEEVERS, J.—I.　A motion has been made to strike out the bill of exceptions on the grounds: *First*—That it is a skeleton bill, and the short hand reporter's transcript of his notes is only partial, and does not include all the writings introduced in evidence; *Second*— That the clerk, in making up the transcript, included not only the reporter's notes and writings certified by him, but also included other writings purporting to have been introduced in evidence, which were not certified by the reporter, or included in his transcript.　Conceding this to be true, it constitutes no ground for striking the bill of exceptions.　Although the bill is skeleton in form, it refers to the evidence, and identifies it more at length and with greater particularity than is usual or necessary.　There has been no additional abstract filed denying the correctness of the one filed by the appellant.　This being so, the latter is regarded as a verity, and we have no occasion to look into the transcript. Concede it to be true that the clerk, or some one else, has interpolated into the transcript and abstract a paper not properly identified by the bill of exceptions, this will not warrant the striking of the bill of exceptions from the record.　It may possibly be that such paper should be struck out, but no such motion is before us.　The motion to strike the bill of exceptions must be overruled.

II.　The defendant levied on the property in controversy on the 22nd day of October, 1879, and, on the 30th day of said month, the plaintiff served on defendant the notice of ownership required by the statute.　The defendant proceeded to advertize and sell the property under the execution.　Afterward, in February, 1880, this action was commenced.

The appellee insists, as the property was not in his posses-

*Marginal notes:*

1. PRACTICE: in supreme court: abstract not denied taken as true.

2. ——: striking out bill of exceptions.

3. RECOVERY of personal property: action against sheriff who has parted with possession.

sion when the action was commenced, that it cannot be maintained; and that the court should so have instructed the jury. We cannot concur in this proposition. If the defendant, when notice of ownership was served on him, or perhaps at any time afterward, before the trial, had disclaimed being in "possession of the property, and did not claim any interest in it," it may be he would not be liable in this action. *Coffin v. Gephart*, 18 Iowa, 256. The defendant refused to recognize the plaintiff as owner, and proceeded wrongfully, it must be conceded on plaintiff's theory, to sell his property to pay another's debt. The defendant, before selling, could, under the statute, have demanded a bond for his own protection, and at no time has he disclaimed having an interest in the property. We think, under the statute, the action can be maintained, and if the plaintiff establishes his right to the property, he may have judgment for the value of such right. Code, § 3239.

III. The property in controversy consisted of a stock of merchandise. I. P. Hardy owned a stock of goods, which he mortgaged to one Booge, who foreclosed the mort-

**4. FRAUD : collusion to cover title: evidence.** gage by notice and sale under the statute. The plaintiff claims that I. P. Hardy purchased some goods at the sale for him, and the defendant claims that the goods were purchased by said Hardy for himself. There was evidence tending to support both theories. One Steever, plaintiff claims, purchased some goods at said sale, and afterward purchased those bought by plaintiff, and employed I. P. Hardy as his clerk, and proceeded to sell the goods at retail in the usual way. The defendant claims that the arrangement with Steever was fraudulent and void as to the creditors of I. P. Hardy, who, defendant insists, in fact owned the goods claimed by Steever. A short time after the Steever arrangement was made, the plaintiff claims to have bought the goods of Steever, and to have employed I. P. Hardy as his clerk to sell the same, with authority to purchase other goods from time to time, and generally to conduct the business as

he, I. P. Hardy, thought best. This was in May, 1877; and the business was so conducted until October, 1879, when the levy was made. During said time the plaintiff was engaged in farming. He was seldom at the store, and did not give much personal attention to the business. There was evidence tending to show that, prior to the foreclosure of the Booge mortgage, I. P. Hardy purchased a small amount of goods, which he took and kept at his house. The defendant asked the said Hardy when on the stand as a witness: "What made you take these goods to to the house?" An objection to the question was overruled, and the witness answered: "I took them to the house because they were not covered by the mortgage; they came after the mortgage to Booge was given." Thereupon counsel for plaintiff said to the witness: "You took them there, then, so they would not be liable to be sold for your debts." An objection to this question was overruled, and the witness answered: "No."

Inasmuch as the transaction spoken of by the witness took place prior to the time plaintiff claims to have purchased the goods, the evidence as to him was inadmissible. It is difficult to see upon what ground the admissibility of this evidence can be properly placed. Concede that the transaction spoken of tended to show fraud on the part of I. P. Hardy, yet, as it took place long prior to the time plaintiff was interested in the goods, he ought not be prejudiced thereby. The same is true as to the evidence of the witness Taylor.

IV. One Hittgen was a witness for the defendant, and gave evidence tending to show that I. P. Hardy was in the exclusive possession of the store, and doing business in his own name, after the plaintiff claims to have purchased the goods of Steever. Hittgen was doing business in the same town, and it was agreed between him and said Hardy that they would not sell salt below a certain price. Hittgen ascertained that the agreement had been broken by the plaintiff and his brother. When Hittgen was on the witness stand, the defendant asked him: "What did

I. P. Hardy say about that." An objection to the question was overruled, and the witness answered: "He said the boys had no business to sell that salt."

In 1878 and 1879, I. P. Hardy made the requisite affidavits and applied for a license to sell tobacco and cigars in his own name in the store. This evidence was objected to, but the objection was overruled.

It is urged that the foregoing evidence should not have been admitted, because the plaintiff was not present when the admission was made. But we think the evidence was admissible as explanatory of the possession of I. P. Hardy.

The inquiry was material whether I. P. Hardy was in possession in his own right or as clerk for the plaintiff. We think the declarations of said Hardy were admissible for the purpose of showing in what capacity he was in possession. *Blake v. Graves*, 18 Iowa, 312.

V. Certain judgments against I. P. Hardy were introduced in evidence, which had been rendered a short time before the plaintiff claims to have purchased the goods. This evidence tended to show that I. P. Hardy was in debt, and we think it is competent, and might prove exceedingly important, if it appeared that the plaintiff had knowledge of such indebtedness. There was evidence tending, it may be remotely, to show that the plaintiff had such knowledge.

VI. The defendant also introduced in evidence certain conveyances made by I. P. Hardy to the the plaintiff, A. H. Hardy, and others, of real estate, executed in 1875 and 1876. An objection to this evidence was sustained. It seems to us that this ruling of the court is erroneous. It is not shown that the conveyances were fraudulent, or part of a scheme or conspiracy, and the evidence must have been admitted on the theory that it tended to show the transaction in controversy to be fraudulent. But this could not be so if the conveyances were made in good faith, and such is the presumption, in the absence of any

showing to the contrary.  There was no connection between the conveyance of land and the purchase of Steever, or the subsequent conduct of the business.  The transactions were nearly two years apart, and, in the absence of any evidence that the conveyances were a part of a fraudulent scheme or conspiracy which culminated in the transaction in question, we do not think the evidence was admissible.  Where two transactions are claimed to be fraudulent, only one of which, however, is being controverted, it must be shown that they are so connected as to evince a common purpose, before the uncontroverted transaction can be admitted in evidence for the purpose of establishing the other to be fraudulent.  *Williams v. Robbins*, 15 Gray, 590.

If the conveyances had been made a short time, say a month or two, prior to the purchase of goods at the mortgage foreclosure and the purchase of Steever, it may be that the evidence would have been admissible, and it would be for the jury to say as to the common design and purpose.  The conveyances were too remote from the principal transaction to warrant such an inference.

It is urged that this evidence is not prejudicial; but, judging from the line of argument taken by counsel for the appellee, we should think it was clearly prejudicial.

VII.  The plaintiff asked an instruction, in substance, that fraud is never presumed, but must be established, and that the burden was on defendant.  This instruction was given with this qualification: "This is true after the plaintiff first shows title in himself." We think the modification made by the court is correct. Clearly, the burden was on the plaintiff to show that he was the owner of the goods in controversy.

8. ——: ——:
burden of
proof: in-
struction.

But counsel for appellant insist that the evidence shows both the title and possession to be in plaintiff.  We, however, think there was evidence tending to show that I. P. Hardy was in possession in his own right.  The third instruction asked, or one of similar import, should have been given.  We

think the court inadvertently omitted to instruct the jury fully on the question presented in the third instruction asked. Because of the subsequent action of the court, we doubt if this failure was prejudicial, but we need not determine this question.

The remaining errors discussed by counsel will not probably occur on another trial.

REVERSED.