BIXBY v. CARSKADDON ET AL.

1. **Practice:** BURDEN OF PROOF: RIGHT TO OPEN AND CLOSE. Where in an action of replevin the defendants admitted plaintiff's right to the property, unless they established that his title was fraudulent, and all other issues were withdrawn, defendants had the burden of proof, and were entitled to open and close the case.

2. **Fraudulent Conveyance:** EVIDENCE: SUBSEQUENT DECLARATIONS OF VENDOR. After a transfer of property which is alleged to be in fraud of creditors, the vendor becomes a stranger to the title for all purposes, and, in an action assailing the title of the purchaser, the acts and declarations of the vendor, even if the vendee was a party thereto, or procured them to be done, are no more binding on the vendee than those of a stranger to the transaction, unless he, under the circumstances, was called upon to deny the same.

3. ——: ——: PRIOR FRAUD OF VENDOR. In an action assailing a transfer of property as fraudulent, evidence of a prior fraudulent transaction between the vendor and a third party is not admissible, even if the vendee had knowledge thereof before his purchase, unless the two transactions were so connected as to evince a common fraudulent purpose. (Compare *Hardy v. Moore*, 62 Iowa, 65.)

4. ——: ——: INSTRUCTION CRITICISED. In such case, an instruction that "*any act or circumstance* in the transaction of the purchase and sale of the property in question, or anything in the time or mode of payment therefor, unusual, or different from what the *average of men*, acting in good faith, would do under like or similar circumstances, * * * are badges of fraud," criticised, as to the words in Italics, as being too broad and indefinite.

5. **Instructions:** REPETITION NOT REQUIRED. Where instructions asked by plaintiff, so far as they were correct propositions of law, were substantially embraced in the charge to the jury, the plaintiff has no ground of complaint on appeal.

6. **Fraudulent Conveyance:** EVIDENCE: LATITUDE IN EXAMINING WITNESSES. Where it is sought to uncover fraud by the examination of one of the participants as a witness, considerable latitude should be given to counsel.

*Appeal from Benton Circuit Court.*

WEDNESDAY, OCTOBER 20, 1886.

ACTION to recover specific personal property. Trial by jury. Judgment for the defendants, and the plaintiff appeals.

*Rickel & Bull* and *Traer & Voris*, for appellant.

*Hubbard, Clark & Dawley*, for appellees.

SEEVERS, J.—This is a second appeal. See 63 Iowa, 164. The plaintiff claims to have purchased the goods in controversy of one Billings, and the defendants pleaded that such purchase and sale was made to hinder and delay the creditors of Billings, and was therefore fraudulent.

I. Prior to the last trial the defendants filed a pleading, admitting that the plaintiff was in possession of the property in controversy, and that he was rightfully entitled to such possession, that the detention of the goods by the sheriff was wrongful, and that the plaintiff was damaged in the sum claimed in the petition, unless his purchase from Billings was fraudulent, and all other defenses except this were withdrawn. Thereupon the defendants claimed the right to open and close the case, and assumed the burden of proof. Their claim in this respect was objected to by the plaintiff, but the court sustained it, and this action of the court is assigned as error. Under the issue, the plaintiff was not required to introduce any evidence, and was entitled to judgment for all he claimed, if the defendants failed to establish the fraudulent character of the sale as pleaded. The burden was there-

*[margin note: 1. PRACTICE: burden of proof: right to open and close.]*

fore upon the defendants, and they had the right to open and close the case.

II. The court instructed the jury as follows: "You will not consider any acts, conversations or declarations by or on the part of Billings, made after the sale of the property in controversy was completed, unless plaintiff was a party thereto, or procured the same to be done, or had knowledge at or before the time of the sale of his [Billings'] intention to do same." An instruction in some respects, in substance, the same as this was held to be erroneous when this case was before us at a former term. (63 Iowa, 164.) Believing the ruling to be correct, we adhere thereto. In Bump, Fraud., Conv. (3d Ed.) 587, it is said: "After the transfer is consummated, the debtor becomes a stranger to the title for all purposes, and his acts and declarations are no more binding on the grantee than are those of a stranger to the transaction." It is immaterial if the plaintiff was a party to the acts and declarations, or procured the same to be made, unless he, under the circumstances surrounding the act or declaration, was called upon to deny the same.

*2. FRAUDULENT conveyance: evidence: subsequent declarations of vendor.*

III. The court instructed the jury as follows: "You are instructed not to consider any conversation or transaction between Shed and Billings occurring prior to the sale of the property in controversy by Billings to Bixby, unless plaintiff was present, and knew of the same, or was informed of the same at the time of or prior to such sale." If, at any time prior to the sale, there was a transaction between Billings and Shed of which the plaintiff had or obtained knowledge prior to the sale in question, then the jury, under the foregoing instruction, were authorized to consider it, although it had no connection whatever therewith. The only issue was whether the sale from Billings to the plaintiff was fraudulent. The conversation or transaction contemplated in the instruction must have had a bearing on such issue. We are authorized to suppose that sev-

*3. ——: ——: prior fraud of vendor.*

eral years prior to this sale there was a transaction between Billings and Shed which tended to show that it was fraudulent, and, if the plaintiff had knowledge thereof at any time prior to his purchase from Billings, would this be evidence tending to show that such purchase was also fraudulent? Clearly not, we think, unless, at least, there was evidence tending to show that there was some connection between the two transactions. Whether there was such connection was not submitted to the jury. However independent and disconnected, therefore, the two transactions may have been, the theory of the instruction is that the fraudulent character of the former is evidence that the latter is of the same character; and we think no well-considered adjudged case can be found which so holds. Bump, Fraud., Conv. (3d Ed.) 582; *Hardy v. Moore*, 62 Iowa, 65.

IV. The court also instructed the jury that *"any act or circumstance* in the transaction of the purchase and sale of the property in question, or anything in the time or mode or payment therefor, unusual, or different from what the average of men, acting in good faith, would do under like and similar circumstances, * * * are badges of fraud." We are doubtful what the court meant by "average of men." Possibly it meant "ordinarily, careful and prudent men," and the jury may have so understood, or they may not. Upon another trial, a change should be made in this respect, and we also suggest that we incline to think the Italicized words convey too broad a meaning.

*4. ——: ——: instruction criticised.*

Paragraphs 10 and 21 of the charge are objected to. We think they are correct.

Many instructions were asked by the plaintiff which were refused in the form asked. Most, if not all, of them, we think, state correct legal propositions, but a careful consideration of such instructions, and the charge of the court, satisfies us that the instructions asked were substantially given the jury in the charge,

*5. INSTRUCTIONS: repetition not required.*

Bixby v. Carskaddon et al.

so far as the same state correct legal propositions, and therefore the plaintiff has no just ground of complaint.

V. The defendants introduced in evidence two depositions of Billings, and at the proper time the plaintiff made **6. FRAUDULENT conveyance: evidence : latitude in examining witnesses.** objections to many of the interrogatories, which were overruled, and in this it is insisted the court erred. It may be proper to say, generally, that, as the defendants were seeking to uncover an alleged fraud, considerable latitude should be given where they attempted to establish such fraud by the evidence of one of the alleged participants therein. The first deposition was taken in 1880, and the second in 1885. The interrogatories in the latter objected to are the third, fourth and tenth. We have read the interrogatories and answers, and considered the objections made, together with the argument of counsel, and feel constrained to say that we think the objections are not well taken, and that the evidence given in response to the questions is competent. It would not, possibly, be proper, in view of a retrial, to state our reasons at length. In argument it is said interrogatories 415, 420, 421, 422, 423 and 429 of the second deposition were objected to, and that the court erred in overruling the objections. It is shown by the amended abstract that no objections were made to 420, 421, and 422, and as to 415 and 423 the record discloses, we think, that only one was objected to, and we are unable to say which one, with the required certainty. As to 429, and the answer thereto, we deem it only necessary to say, in view of the evidence preceding it, that there was no prejudicial error in overruling the objections.

It is said the court erred in admitting in evidence a certain mortgage and deed, but, as no such error is assigned, the objection cannot be considered.

It is not deemed necessary to consider the other errors assigned.

REVERSED.