MARY NEUFFER, Appellant, v. MARTIN MOEHN.

MARTIN MOEHN V. MARY NEUFFER, Appellant.

FRAUDULENT CONVEYANCE: *Participation of grantee essential—declaration of grantor.*

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTHE,. Judge.

FRIDAY, DECEMBER 13, 1895.

*T. J. Trulock* and *A. M. Antrobus* for appellant.

*S. L. Glasgow* and *John M. Mercer* for appellee.

Kinne, J.—I. Appellant, as plaintiff, began an action in equity against the defendant, Martin Moehn, to set aside a deed to a certain lot in the city of Burlington, Iowa, which had been executed by one Henry Moehn to his son Martin Moehn, and which was claimed to be fraudulent as against the plaintiff, a creditor of said Henry Moehn. Thereafter Martin Moehn, the defendant in said suit, instituted his action in equity, making said plaintiff and the sheriff defendants, and seeking therein to restrain and enjoin the sale of the premises in controversy. The causes were consolidated, and tried as one, and a decree entered by the lower court dismissing plaintiff's petition in the first case, and perpetually enjoining her and the sheriff of the county from selling the lot now in dispute. From this decree she appeals.

The various pleadings of the parties present for our consideration but one question, viz., was the conveyance of the lot in controversy from Henry Moehn to his son fraudulent as against plaintiff? It is undisputed that the conveyance was made shortly prior to the recovery of plaintiff's judgment. The evidence on the part of plaintiff, if it can be considered, tends to show that the conveyance was fraudulent, and that no consideration existed for it. It appears that Henry Moehn, the grantor, and Monica Moehn, his wife, were the parents of the grantee. In 1887 they owned certain lots in the city of Burlington, upon which were situated some buildings; two or three of them being used for dwellings, one for a grocery, one for a cooper shop, and one for a butcher shop. During said year some of these buildings were destroyed by fire. Prior thereto appellee and his wife resided in one of these houses. Now appellee claims that, in order to rebuild the burned buildings, it was agreed between him and his parents that if appellee would furnish the money to rebuild he might reside in one of the buildings as long as he chose so to do, and if

he removed therefrom they would refund the amount he had advanced. He claims that in pursuance of this arrangement he advanced and expended from one thousand six hundred dollars to one thousand eight hundred dollars for labor and material on said rebuilding; appellee and his family resided in one of these houses so rebuilt until about November, 1892, and paid the taxes on the property, and for repairs and insurance; and that the taxes amounted to one hundred dollars per year. In the year 1892, Monica Moehn died, leaving her husband, the father of appellee, surviving her, he then being seventy-eight years old. In August, 1892, appellee was building a house for himself in another part of the city, and contemplated removing from the property heretofore mentioned, to his own house. About this time the deed in question was made from the father to the son. Appellee executed to his father a note for one thousand five hundred dollars due in sixty days, and received the deed which conveyed to him the lot in controversy; also his father's interest in the estate left by his late wife. This interest was the sum of one thousand two hundred dollars which she willed to him. The lot in controversy was worth one thousand dollars. When this deal was consummated appellee says it was the understanding and agreement had with his father that if appellee should continue to reside in the house so rebuilt, he (appellee) should pay the note; if, however, appellee removed therefrom, then the one thousand five hundred dollar note was to be applied in settlement of the amount advanced by appellee to rebuild the buildings, as we have before stated. In November, 1892, appellee removed from the premises in controversy, and he testifies that he then had a settlement with his father, when the one thousand five hundred dollar note was surrendered by the father to him as paid in pursuance of their agreement. That thereby appellee became the owner of the lot in question in payment and settlement of the amount he had thus advanced to his parents. The appellee testified that when he received the deed he had no knowledge whatever of any fraudulent intent on the part of his father in the disposition of the property. There is no direct evidence that appellee did have such knowledge, and, if he did, it must arise from the facts and circumstances in the case. We cannot enter upon a discussion of them. It is sufficient to say, however, that, even if the father had such fraudulent intent, it is not shown that the son was a party to it, or had any knowledge of it when he took the deed. It may be admitted that the arrangement testified to by the son was, to say the least, unusual; and still we think the evidence shows it was as he claims. But. however that may be, it seems to us that plaintiff has failed to establish her case against the defendant. She showed by her witnesses that in conversations with them the father had made use of language showing that he was going to

put the title to this lot out of his hands in order to prevent plaintiff from getting it, and that it was a sham sale, and without consideration. Most of these statements were made after the deed had been delivered. None of them occurred in presence of the grantee, or were known to him. They were, therefore, not admissible as against the grantee as a basis for setting aside the conveyance. It is well settled that after the consummation of a transfer of land the grantor becomes a stranger to the title, and his acts and declarations are not binding upon the grantee, and cannot be received to impeach the character of the conveyance as being fraudulent. Bump, Fraud. Conv. p. 587, and cases cited; *O'Neill v. Vanderburg*, 25 Iowa, 107; *Manufacturing Co. v. Johnson*, 50 Iowa, 143; *Bener v. Edginqton*, 76 Iowa, 105 (40 N. W. Rep. 117); *Allen v. Kirk*, 81 Iowa, 658 (47 N. W. Rep. 906). See, also, *Bixby v. Carskaddon*, 63 Iowa, 164 (18 N. W. Rep. 875), and 70 Iowa, 726 (29 N. W. Rep. 626). But appellant contends that this evidence was not offered to prove the fraudulent transaction, but for the purpose of showing the fraudulent intent on the part of the father. If it be conceded that the evidence was proper for that purpose, still we think that appellant has failed to bring knowledge of this intent home to the son. *Chase v. Walters*, 28 Iowa, 468. Evidence in regard to the declarations of the father made prior to the transfer might be admissible to prove the fraud on his part, but, if we should consider such evidence in this case sufficient for that purpose, still, as we have said before, neither knowledge of such fraud by the son, nor participation by him in it, is shown. The decree below is *affirmed*.