GRAEN'S MENS WEAR, INC., an Iowa Corporation, and Jack Graen, individually, Appellants,

v.

STILLE–PIERCE AGENCY, Steven Stille and Tim Pierce, Appellees.

No. 67680.

Supreme Court of Iowa.

Jan. 19, 1983.

Clarence Dan Connell and John W. Duffy of Connell & Duffy, P.C., Storm Lake, for appellants.

Maurice B. Nieland of Kindig, Beebe, Rawlings, Nieland & Killinger, Sioux City, and Wendell Pendleton of Pendleton Law Firm, Storm Lake, for appellees.

Considered by REYNOLDSON, C.J., and LeGRAND, UHLENHOPP, HARRIS, and McCORMICK, JJ.

REYNOLDSON, Chief Justice.

There was a jury verdict for defendants insurance agency and its partners in this action for damages resulting from defendants' alleged negligent failure to procure burglary insurance plaintiff Graen requested for his Storm Lake clothing store. Plaintiffs, appealing, raise several evidentiary issues. Because plaintiff Graen's Mens Wear, Inc., apparently is a closely held corporation, we shall refer to Jack Graen as the sole plaintiff.

Plaintiff testified that in 1976 he told defendant Pierce he wanted "wind, fire, theft, liability and workmen's comp" insurance, and the latter replied "he was going to take care of me." In the spring of 1977

plaintiff told Pierce to put the insurance into effect, but he never saw the policy. He further testified that on June 4, 1979, alarmed by a large burglary loss in another town, he called Pierce and asked "[i]f anything like this would happen to me, would I be okay?", to which Pierce replied, "Pal, don't worry about it. You're taken care of."

August 12, 1979, one of plaintiff's stores was burglarized, with an extensive loss of merchandise. Plaintiff testified that when he reported the loss to defendant Stille the latter stated, "Don't worry. You're covered." Later in the day he was told there was no coverage for the loss.

Defendants' evidence controverted the above testimony. Pierce testified that although plaintiff never asked for theft insurance he nonetheless made application to Aetna Life and Casualty Company for "all risk" insurance that would have included theft. The company replied in writing (placed in evidence), "Do not quote all risk due to lack of alarm systems." Pierce stated that when he told plaintiff an alarm system would cost between $800 to $1000 the latter took the position he was not interested in that coverage. When the policy arrived, Pierce testified he went over it with plaintiff and carefully explained its features.

Defendants denied they ever told plaintiff he had theft coverage. Pierce offered proof he was attending an out-of-state golf tournament on June 4, 1979, the day plaintiff allegedly telephoned him regarding his insurance coverage.

Other relevant facts will be set out in our discussion of the evidentiary issues in the following divisions. Plaintiff contends trial court committed error in excluding certain testimony of a witness to an alleged telephone conversation, in excluding testimony of witnesses relating to prior consistent statements, in admitting evidence as business records, and in admission of evidence to contradict a stipulation.

I. *Excluded Testimony of Witness to Telephone Conversation.*

Plaintiff offered the testimony of his employee Beverly Keen as a bystander to the telephone conversation he allegedly had with Pierce on June 4, 1979. She could hear only plaintiff's part in the conversation. Trial court sustained motions to strike her conclusory statements that plaintiff was talking to Pierce, except for one volunteered statement that "[h]e called Mr. Pierce Tim. That's why I know that was the person he was talking to." Trial court admonished this witness "to answer your counsel's question exactly as to what you heard Mr. Graen say and make no assumptions."

Plaintiff asserts the court's rulings were erroneous for two reasons: (1) plaintiff earlier testified he was calling Pierce and (2) "testimony of a bystander to a telephone conversation is admissible even though the . . . bystander cannot state with certainty who the person on the other end of the line is." Defendants contend trial court correctly limited Keen's testimony to what she heard plaintiff say into the receiver, that the ruling was within the court's judicial discretion and nonprejudicial to plaintiff.

A "basic requirement for a witness who is not testifying as an expert is that his testimony be founded upon personal knowledge, whether the testimony be the expression of the witness' opinion or a shorthand rendering of fact." *Meeker v. City of Clinton,* 259 N.W.2d 822, 831 (Iowa 1977). Here Keen had no personal knowledge identifying the person to whom plaintiff allegedly was talking. She was permitted to relate his name as used by plaintiff, together with the other portions of the alleged conversation that she recalled. Under *Meeker,* Keen failed to satisfy the basic requirement of a testifying witness. We find no abuse of trial court's discretion in sustaining defendants' objections and striking Keen's conclusions that plaintiff was talking to Pierce. *See State v. Whitfield,* 315 N.W.2d 753, 755 (Iowa 1982) ("A trial court ruling on a competency question is discretionary and will be reversed only if an abuse of discretion is shown.").

II. *Excluded Testimony of Witnesses Relating to Prior Consistent Statements.*

Plaintiff attempted to question store employees Beverly Keen and Brad Sargent

concerning what plaintiff had told them following his alleged telephone conversation with Pierce on June 4, 1979. Hearsay objections to these questions were sustained.

After plaintiff's testimony regarding the alleged call, defendants, cross-examining, sought to impeach him through his discovery deposition concession that at no time before the burglary did defendants Pierce or Stille tell plaintiff his store was covered for theft and burglary loss. Plaintiff asserts this provided the necessary foundation for admission of the Keen and Sargent testimony under Federal Rule of Evidence 801(d)(1)(B),[1] which rule, he argues, we should adopt.

We are neither required to consider plaintiff's proposal, nor test the court's rulings under our applicable decisions. *See State v. Cornell,* 266 N.W.2d 15, 20 (Iowa), *cert. denied,* 439 U.S. 947, 99 S.Ct. 340, 58 L.Ed.2d 338 (1978); *State v. Galloway,* 187 N.W.2d 725, 728 (Iowa 1971); *State v. Vincent,* 24 Iowa 570, 574–75 (1868). Assuming the witnesses' rejected testimony was rehabilitative, trial court's error, if any, was not preserved. No offer of proof showing how these witnesses would have responded was made. *See State v. Gartin,* 271 N.W.2d 902, 909–10 (Iowa 1978); *Hayes v. Chicago, Rock Island & Pacific Railway,* 239 Iowa 149, 151–52, 30 N.W.2d 743, 745 (1948). Upon the whole record we do not think what plaintiff sought to prove was so apparent that a proffer was unnecessary. *Sandon v. John Hancock Mutual Life Insurance Co.,* 245 Iowa 390, 394–95, 62 N.W.2d 247, 250 (1954); *see Hartwig v. Olson,* 261 Iowa 1265, 1271–72, 158 N.W.2d 81, 85 (1968); *American Express Co. v. Des Moines National Bank,* 177 Iowa 478, 494, 152 N.W. 625, 630 (1915). No reversible error appears here.

### III. *Admission of Business Records.*

Upon cross-examination plaintiff denied he had rejected all risk insurance for a store

he owned in Estherville. For impeachment, defendants called as a witness Lee Barnes, an Estherville insurance agent who wrote the insurance plaintiff carried on that store. Barnes described his agency's established practice of keeping a log of all incoming phone calls. He produced a log describing an incoming telephone message from Jack Graen on February 19, 1976, "Inc[rease personal property coverage] to 120,000 & don't add all risk." Barnes did not personally make the log entry. The office employee who did testified she no longer had an independent recollection of making it. When the page of the log book containing this entry was offered, plaintiff objected on the grounds there was no foundation to establish the call actually was made by Jack Graen, the exhibit constituted hearsay, and the business record exception to the hearsay rule did not permit admission of business records from nonparties. On appeal plaintiff does not rely on the last ground.

We have held Iowa Code section 622.28 (business records) is to be construed liberally. *Shinrone, Inc. v. Tasco, Inc.,* 283 N.W.2d 280, 287 (Iowa 1979); *State v. Lain,* 246 N.W.2d 238, 242 (Iowa 1976). Further, trial court is accorded "broad discretion" to determine whether the statute's requirements are met. *See State v. Anderson,* 159 N.W.2d 809, 815 (Iowa 1968); *see also Prestype, Inc. v. Carr,* 248 N.W.2d 111, 117 (Iowa 1976) ("considerable discretion"). The record before us discloses all of the section 622.28 requirements for admission of the controverted exhibit were satisfied. Trial court did not abuse its discretion in overruling plaintiff's objections.

### IV. *Admission of Evidence Contradicting Stipulation.*

When the trial commenced plaintiff produced a memorandum copy of the policy of insurance, which for identification was marked "plaintiffs' exhibit 1." The following record was made:

> the statement, and the statement is ... consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication ....

---

1. Insofar as relevant here, Fed.R.Evid. 801(d)(1)(B) provides:

   A statement is not hearsay if ... [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning

MR. CONNELL [plaintiff's counsel]: At this time, Mr. Nieland, can we stipulate and agree for the record that Plaintiffs' Exhibit No. 1 is the memorandum copy of insurance that the Stille-Pierce Agency had in their possession at the time this loss occurred?

MR. NIELAND [defense counsel]: So agreed.

The exhibit then was offered and received in evidence.

Several days into the trial, when defendant Stille was under cross-examination, plaintiff's counsel suggested to him there was a form among the papers comprising exhibit 1 that would provide theft coverage. Stille replied he would be surprised if there was. Asked to search the papers, Stille then confirmed that included in the then 24-page exhibit was a "MP 101A form" that "would give theft coverage."

On redirect examination Stille testified he had sent the memorandum of insurance to plaintiff's counsel in a letter dated August 17, 1979, and it had never been returned to his office, nor had he seen it again before trial commenced. In chambers, defense counsel moved to withdraw the stipulation relating to plaintiffs' exhibit 1, arguing that he had never examined the policy before making the stipulation, considering it immaterial because plaintiff had never claimed it included theft coverage and in fact brought the action for negligent failure to provide such insurance. Counsel claimed surprise and fraud. This motion was overruled.

Thereafter, over plaintiff's objections that testimony could not be introduced to negate a stipulation made of record, nor to alter the terms of a written document received in evidence, defendants were permitted to call witnesses to show the two-page form including theft coverage was not in the memorandum copy of the insurance policy when it left their possession.

Defendants Pierce and Stille both testified the MP 101A form was not in the policy after the loss, nor when it was sent to plaintiff's counsel. Stille pointed out that the declaration page on the memorandum of policy did not list the MP 101A form as one of the ten forms or endorsements attached. Pierce used the agency's "daily" to support his testimony that plaintiff was never charged a premium for theft, burglary, robbery or all risk insurance.

Aetna's commercial insurance department processing superintendent testified the date "7/77" printed on the MP 101A form attached was the "edition date" of the form (four months after the date of plaintiff's policy), that the forms were not approved by the insurance commission for use in Iowa until January 27, 1978, nor were they used by the company until late December 1978. He pointed out that all the other coverage forms attached to the policy were "MLB" forms and if another coverage had been added to this policy an older MLB form would have been used because "[w]e can't mix and match MLB's and MP's." The company typist whose initials appeared on the policy testified the MP 101A form was not available in her office until January 1979 and that she never included such forms in policies prepared before that time.

In two further appearances on the stand, plaintiff testified he had picked up exhibit 1 from his lawyer's office to show it to a different agent who wrote a new policy before November 1, 1979, and thereafter plaintiff kept it in his office safe and did not return it to his attorney until some eight or ten months later.

An examination of plaintiffs' exhibit 1 discloses the attached MP 101A form is the only one hole-punched on the side. Unlike all the other pages, it appears to have been folded letter-size. It provides no place for a validating signature, date, or other identifying information.

None of the above evidence was contradicted or impeached by the plaintiff.

Appealing, plaintiff relies on the general rule relating to stipulations:

Evidence to disprove, or which has a tendency to disprove, the facts admitted, or which is inconsistent therewith, or contradictory thereof, is not admissible, unless and until the stipulation is nullified

by consent or order of court; nor is evidence admissible which has a tendency to limit or destroy the effect of the stipulation.

83 C.J.S. *Stipulations* § 24, at 63–64 (1953); *see, e.g.,* 73 Am.Jur.2d *Stipulations* § 8, at 544 (1974); 9 J. Wigmore, *Evidence* § 2590, at 822 (Chadbourn rev. 1981); *Goolsby v. Allstate Insurance Co.,* 130 Ga.App. 881, 883, 204 S.E.2d 789, 792 (1974); *LeBarron v. City of Harvard,* 129 Neb. 460, 470, 262 N.W. 26, 32 (1935).

■ This rule, however, is not without qualifications and exceptions. In construing stipulations the court should attempt to ascertain and give effect to the intention of the parties. To this end, the stipulation should be interpreted with reference to its subject matter and in light of the surrounding circumstances and the whole record, including the state of the pleadings and issues involved. *Hawkins/Korshoj v. State Board of Regents,* 255 N.W.2d 124, 126–27 (Iowa 1977). We have recognized that opposing sides may put different interpretations on a stipulation. *State v. Schreck,* 258 Iowa 218, 223, 137 N.W.2d 914, 916 (1965).

■ In *Estate of Clark v. Lundy,* 181 N.W.2d 138, 143 (Iowa 1970), we also noted that stipulations are of two kinds. The first is a mere admission of fact, relieving a party from the inconvenience of making proof. Setting aside such a stipulation, we observed, may leave the parties in no worse position than they were before the stipulation was made. The second kind of stipulation may constitute a concession of some rights as consideration for those secured. Such a stipulation is entitled to all the sanctity of an ordinary contract and where the status quo cannot be reestablished the stipulation should be set aside only in a plain case of fraud, collusion, mistake, accident, surprise, or oppression. *See also Lawrence v. Lawrence,* 217 N.W.2d 792, 796 (N.D.1974); *Lillard Pipe and Supply, Inc. v. Bailey,* 387 P.2d 118, 121–22 (Okla.1963); *Thayer v. Federal Life Insurance Co.,* 217 Wis. 282, 285, 258 N.W. 849, 850 (1935); Annot., 161 A.L.R. 1161, 1186–87 (1946).

This case presents the first type of stipulation described above. Obviously, the stipulation did what it ostensibly was designed to do: (1) relieve plaintiff from the task of proving his contractual relationship with his insurance agents; (2) prove that a policy had been issued; and (3) eliminate the secondary evidence objection, as the original of the policy never had been found. There was no apparent benefit to the defendants in making the stipulation.

■ We hold, under all the circumstances developed in the evidence, trial court would have been justified in setting aside the stipulation. Minimally, the court clearly did not abuse its discretion in permitting defendants to introduce evidence to show the condition of the memorandum copy of the policy when it left their possession shortly after the burglary. The defendants' surprise, which would have furnished grounds for nullifying even the second type of stipulation, must have been matched by that of the trial judge who found the plaintiff furnishing proof of theft coverage that would have put him out of court, and defendants vigorously proving the policy did not provide coverage, which kept them in. In this anomalous situation, we hold trial court committed no error.

V. *Exclusion of Alleged Claim of Prior Negligent Failure to Provide Coverage.*

In a pretrial limine motion, defendants moved to prohibit plaintiff or counsel from mentioning or conveying "in any manner" to the jury a claim by an unrelated third party against defendants sounding in "professional malpractice." Defendants asserted such testimony would be "highly improper, irrelevant and immaterial, and prejudicial." Trial court sustained the motion,

> without prejudice to the right to offer proof during the course of the trial in the jury's absence of those matters covered in the motion, and if it appears in the light of the trial record that the evidence is relevant, material, and competent, it may then be introduced ....

At trial plaintiff in chambers moved the court to reconsider, asserting that one

Charles Dahl would testify that he purchased liability and property damage insurance from defendant Pierce. After Dahl's building collapsed, however, Pierce told Dahl that the loss was not covered. Plaintiff's counsel argued this testimony was relevant "to show a pattern, a custom, a way of doing business on behalf of the defendants." Defendants raised the prior objections. Trial court overruled plaintiff's motion, thus excluding the testimony of the witness Dahl.

Evidence showing alleged similar wrongful acts is not admissible to show propensity or conformity. It may, however, be admissible to show common purpose, design or plan. *See Hall v. Crow,* 240 Iowa 81, 91, 34 N.W.2d 195, 201 (1948); *McGuire v. Kenefick,* 111 Iowa 147, 148, 82 N.W. 485, 485 (1900); *Hardy v. Moore,* 62 Iowa 65, 71, 17 N.W. 200, 202 (1883); C. McCormick, *Law of Evidence* § 197, at 468–69 (E. Cleary 2d ed. 1972). Moreover, "[a] trial court has discretion to exclude evidence when its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury." *Anderson v. Low Rent Housing Commission of Muscatine,* 304 N.W.2d 239, 252 (Iowa), *cert. denied,* 454 U.S. 1086, 102 S.Ct. 645, 70 L.Ed.2d 621 (1981); *see also Northrup v. Miles Homes, Inc. of Iowa,* 204 N.W.2d 850, 856 (Iowa 1973) ("Civil trial admissibility of similar acts is basically a question of practicality involving the inconvenience of collateral issues.").

Here the proffered testimony allegedly related to an unconnected incident involving different insurance and circumstances. Its admission would have invited retaliatory offers by defendants to show instances of insureds satisfied with the representations and services of the defendants. We hold trial court did not abuse its discretion in excluding it.

We affirm the judgment for defendants entered in district court.

AFFIRMED.