# IN THE SUPREME COURT OF IOWA

No. 09–0937

Filed November 19, 2010

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**JOHN W. GAILEY,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent has committed ethical infractions and recommends a thirty-day suspension of respondent's license to practice law. **LICENSED SUSPENDED.**

Charles L. Harrington and Amanda K. Robinson, for complainant.

John W. Gailey, Fort Dodge, pro se.

**WIGGINS, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against the respondent, John W. Gailey, alleging multiple violations of our ethical rules. A division of the Grievance Commission of the Supreme Court of Iowa filed a report recommending that we suspend Gailey's license to practice law in Iowa for thirty days. Pursuant to our court rules, we are required to review the report of the commission. *See* Iowa Ct. R. 35.10. Upon our review, we concur the respondent violated our ethical rules and suspend his license to practice law for sixty days.

### I.  Scope of Review.

We review lawyer disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Marks*, 759 N.W.2d 328, 330 (Iowa 2009). The board has the burden to prove disciplinary violations by a convincing preponderance of the evidence. *Id.* A convincing preponderance of the evidence is " 'less than proof beyond a reasonable doubt, but more than the preponderance standard required in the usual civil case.' " *Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 230 (Iowa 2006) (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lett*, 674 N.W.2d 139, 142 (Iowa 2004)). We give weight to the commission's findings, but its findings do not bind us. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser*, 782 N.W.2d 147, 149 (Iowa 2010).

### II.  Findings of Fact.

Instead of holding a hearing, the commission decided the case on a joint stipulation filed by the board and Gailey. The stipulation contained a stipulation of facts and a stipulation recommending a thirty-day suspension. The fact that the parties stipulated a recommended sanction requires us to conclude the parties also stipulated Gailey's conduct violated Iowa's Rules of Professional Conduct.

We have recognized there are two types of stipulations that a tribunal may use in litigated matters. *Matter of Prop. Seized*, 501 N.W.2d 482, 485 (Iowa 1993). The first type is a stipulation that admits facts, relieving a party from the inconvenience of proving the facts in the stipulation. *Graen's Mens Wear, Inc. v. Stille-Pierce Agency*, 329 N.W.2d 295, 300 (Iowa 1983). The second type is a stipulation that amounts to a concession of an issue in the litigation. *Matter of Prop. Seized*, 501 N.W.2d at 485.

A stipulation of facts by the parties is binding on the parties. *Graen's Mens Wear, Inc.*, 329 N.W.2d at 299. We construe factual stipulations by attempting to determine and give effect to the parties' intentions. *Id.* at 300. In doing so, we interpret the stipulation "with reference to its subject matter and in light of the surrounding circumstances and the whole record, including the state of the pleadings and issues involved." *Id.*

We treat a stipulation conceding an issue in the case like a settlement agreement. *In re Marriage of Briddle*, 756 N.W.2d 35, 39–40 (Iowa 2008). If sufficient legal consideration supports this type of stipulation, it is entitled to all of the sanctity of an ordinary contract. *Id.* at 40. However, we are not bound to enforce these stipulations if they are unreasonable, against good morals, or contrary to sound public policy. *In re Estate of Clark*, 181 N.W.2d 138, 142 (Iowa 1970).

Applying these principles to a disciplinary case, we will rely on the stipulation to determine the facts in issue. However, we will not be bound by a stipulation of a violation or of a sanction in reaching our final decision in a disciplinary case. We have inherent constitutional power to license and discipline attorneys within the State of Iowa. *Comm. on Prof'l Ethics & Conduct v. Gartin*, 272 N.W.2d 485, 487 (Iowa 1978). Our rules

require us to determine whether an attorney's conduct violates our ethical rules, and if it does, we must determine the proper sanction for the violation. *See* Iowa Ct. R. 35.10. Nowhere in our rules have we given the parties the authority to determine what conduct constitutes a violation of our ethical rules or what sanction an attorney should receive for such violation. The parties to a disciplinary proceeding cannot substitute their judgment as to what conduct constitutes a violation of our ethical rules or what sanction we should impose for such a violation. The constitution and our court rules vest this function solely in our court. Accordingly, to allow the parties to make these determinations is against the public policy surrounding our attorney disciplinary system.

Therefore, we find the facts from the stipulation of facts. After doing so, we will determine whether the facts establish a violation of the Iowa Rules of Professional Conduct. Finally, if we find a violation, we will determine the appropriate sanction.

Using the stipulation of the parties together with our review of the record, we make the following findings of fact. John Gailey is a seventy-four-year-old attorney, practicing law for forty-five years in Iowa. His son, Denis, told Gailey the state planned to charge Denis with sexual abuse of his stepdaughter. Gailey contacted the county attorney and advised her that he would voluntarily surrender Denis to the authorities and arrange for Denis's bail. On April 25, 2007, before Gailey was able to surrender his son, Gailey learned that his son kidnapped his spouse, Dawn, and their biological child. Upon learning of this kidnapping, Gailey advised the authorities of Denis's actions. Denis was arrested and the state charged him with kidnapping. On April 26 the criminal court entered a no-contact order requiring Denis to have no contact with Dawn.

On April 27 Dawn filed a dissolution of marriage petition. Counsel represented her in the dissolution matter. On May 7 Gailey filed an appearance on behalf of his son in the dissolution matter. Although a second attorney filed an appearance in the dissolution on behalf of Denis, Gailey did not withdraw as attorney in the dissolution action until July 25.

On June 29, while still representing Denis in the dissolution matter, Gailey met with Dawn. Dawn's attorney did not give Gailey permission to contact Dawn. At the meeting, Gailey provided Dawn with a letter from Denis. Denis requested Gailey deliver the letter to Dawn and speak with Dawn face to face on his behalf regarding her potential testimony in the criminal action. Denis violated the no-contact order by having his father deliver the letter to Dawn.

The letter is entitled "My Last Plea for Your Help." In the letter, Denis states: "I have no fantasies in my head that I'm gonna get off light on all this but I think that you could be my light at the end of the tunnel. *People always change their story just a little bit and it allows for some chance in the situation.*" (Emphasis added.) Denis goes on to say that he thinks he should be punished but not locked up and the key thrown away.

Dawn reviewed a copy of the letter from Denis and asked Gailey what the letter meant. Gailey responded that he believed that if she were to testify that there was no permanent damage, physically or psychologically, that the criminal charges would be lessened. He also told her he thought Denis would be agreeable to a more favorable division of assets in the dissolution case if she were to testify in this manner. Part of the conversation between Gailey and Dawn also related to her concerns about the prosecutor asking her daughter to testify at

trial. Gailey advised Dawn to talk to the county attorney about these concerns. At no time did Gailey directly ask Dawn to lie or change her testimony.

On July 24 the state charged Gailey with tampering with a witness in violation of Iowa Code section 720.4 (2007). That charge was dismissed due to the state's failure to file a timely trial information. Thereafter, the state charged Gailey with suborning perjury in violation of Iowa Code section 720.3 and aiding and abetting a violation of a no-contact order in violation of Iowa Code sections 664A.7 and 703.1. These criminal charges proceeded to trial. The court acquitted Gailey of the charge of suborning perjury, but found him guilty of aiding and abetting a violation of a no-contact order, a simple misdemeanor.

### III. Violations.

In its complaint, the board alleged Gailey's conduct violated the following Iowa Rules of Professional Conduct: 32:3.4(b), 32:4.2(a), 32:8.4(a), 32:8.4(b), 32:8.4(c), and 32:8.4(d). We will discuss each allegation separately.

**A. Rule 32:3.4(b).** Rule 32:3.4(b) provides that "[a] lawyer shall not falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law." Iowa R. Prof'l Conduct 32:3.4(b). As the comment to the rule explains, "[f]air competition in the adversary system is secured by prohibitions against destruction or concealment of evidence, improperly influencing witnesses, obstructive tactics in discovery procedure, and the like." *Id.* cmt. 1. If Gailey requested Dawn to refrain from giving favorable testimony to the state in the criminal matter involving Denis, Gailey violated rule 32:3.4(b). *Matter of Alcantara*, 676 A.2d 1030, 1035 (N.J. 1995).

In response to Dawn's question as to what the letter meant, Gailey explained to her he believed that if she were to testify that there was no permanent damage, physically or psychologically, the criminal charges against Denis would be lessened. This in and of itself does not violate rule 32:3.4(b). A lawyer is allowed to explain the consequence of a witness's testimony without fear of being accused of counseling or assisting a witness to testify falsely. Moreover, the stipulation affirmatively states Gailey did not ask Dawn to lie or change her testimony.

We do believe, however, Gailey's conduct went farther than just explaining the consequence of Dawn's testimony. When Gailey told Dawn that he thought Denis would be agreeable to a more favorable division of assets in the dissolution case if she were to testify in this manner, he crossed the line. By offering Dawn a favorable dissolution settlement, Gailey violated rule 32:3.4(b), which forbids an attorney to offer an inducement to a witness that is prohibited by law.

We see no problem with an attorney reimbursing a witness for his or her actual expenses, including the witness's loss of time from employment. We also recognize in the case of expert witnesses, experts should receive reasonable compensation from an attorney for the expert's time in preparing and testifying at trial. Generally, courts around the country allow these types of payments by an attorney to a person when the person is called as a witness to testify. 2 Geoffrey C. Hazard, Jr. et al., *The Law of Lawyering* § 30.6, at 30-10 (3d ed. 2001).

Gailey's conduct goes well beyond reimbursement for expenses, reimbursement for time lost from employment, and expert witness fees. Here, Gailey offered Dawn a favorable dissolution settlement as an inducement for her to testify in a certain way. The dissolution settlement

was unrelated to any lawful reimbursement for her testimony. Accordingly, offering Dawn a favorable dissolution settlement is an inducement prohibited by law and a violation of rule 32:3.4(b).

**B. Rule 32:4.2(a).** Rule 32:4.2(a) provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

Iowa R. Prof'l Conduct 32:4.2(a). The language of rule 32:4.2(a) is substantially similar to our prior disciplinary rule, DR 7–104(A)(1). Our prior rule stated:

> (A) During the course of representing a client a lawyer shall not:
>
> (1) Communicate or cause another to communicate on the subject of the representation with a party known to be represented by a lawyer in that matter except with the prior consent of the lawyer representing such other party or as authorized by law.

Iowa Code of Prof'l Responsibility DR 7–104(A)(1).

We have interpreted our prior rule to prohibit an attorney from communicating with an adverse party represented by counsel concerning litigation or a transactional matter unless the attorney for the adverse party gives the opposing attorney permission to talk to the adverse party. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Box,* 715 N.W.2d 758, 763 (Iowa 2006). We see no reason not to interpret our present rule in the same manner.

The record establishes Gailey communicated with Dawn about a financial settlement in the dissolution matter at a time when she was represented by counsel. The record also reveals that Gailey did not have the permission of Dawn's attorney when they had that conversation.

Therefore, we find Gailey's conduct in communicating with Dawn violated rule 32:4.2(a).

**C. Rule 32:8.4(a).** Rule 32:8.4(a) states that "[i]t is professional misconduct for a lawyer to . . . violate or attempt to violate the Iowa Rules of Professional Conduct." Iowa R. Prof'l Conduct 32:8.4(a). We have previously held that we will not consider a violation of rule 32:8.4(a) as a separate violation for purposes of determining an attorney's sanction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010). Accordingly, we give this charge no further consideration.

**D. Rule 32:8.4(b).** Rule 32:8.4(b) provides that "[i]t is professional misconduct for a lawyer to . . . commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects." Iowa R. Prof'l Conduct 32:8.4(b). Gailey was convicted of aiding and abetting a violation of a no-contact order in violation of Iowa Code sections 664A.7 and 703.1, a simple misdemeanor. We have the authority to discipline an attorney who is convicted of a misdemeanor that violates the rules of professional conduct. Iowa Ct. R. 35.10(2).

Not all criminal convictions violate rule 32:8.4(b). To prove a violation of rule 32:8.4(b) the board must show some rational connection between the attorney's conduct and the attorney's fitness to practice law other than the criminality of the act. *Templeton*, 784 N.W.2d at 767. We find the board has met this burden.

Attorneys cannot ignore a ruling of a tribunal made in the course of a proceeding. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy*, 728 N.W.2d 806, 813 (Iowa 2007). It follows that a lawyer should not aid or abet a party to ignore a no-contact order. It is essential that the aider

and abettor have knowledge of the perpetrator's criminal activity prior to its commission. *State v. Vesey,* 241 N.W.2d 888, 891 (Iowa 1976). Here, Gailey had knowledge of his son's intent to violate the no-contact order by having the letter delivered to Dawn. The conduct of an attorney helping another person violate a court order evidences the attorney's disrespect for a lawful order of the court. Gailey's disrespect for a court order leads us to the conclusion that an attorney who cannot respect a lawful order of the court lacks the required fitness to practice law. Thus, we find a rational connection between Gailey's conduct and Gailey's fitness to practice law other than the criminality of the act. Therefore, we find Gailey violated rule 32:8.4(b).

**E. Rule 32:8.4(c).** Rule 32:8.4(c) states that "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." The stipulation acknowledged Gailey did not ask Dawn to lie or change her testimony. Therefore, the board has not proved Gailey violated rule 32:8.4(c).

**F. Rule 32:8.4(d).** Rule 32:8.4(d) provides that "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice." We have defined conduct prejudicial to the administration of justice to be acts that hamper " 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely' " by violating the well-understood norms and conventions of the practice of law. *Templeton,* 784 N.W.2d at 768 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe,* 706 N.W.2d 360, 373 (Iowa 2005)). In order for our system of justice to work, attorneys should counsel their clients to abide by court orders. It is outside the well-understood norms and conventions of the practice of law for a lawyer to aid and abet the violation of a no-contact order or offer a witness an

inducement to testify that is prohibited by law. Thus, we find Gailey's conduct violated rule 32:8.4(d).

## IV. Sanction.

In determining the sanction a lawyer must face for misconduct, we have stated:

> The goal of the Code of Professional Responsibility is "to maintain public confidence in the legal profession as well as to provide a policing mechanism for poor lawyering." When deciding on an appropriate sanction for an attorney's misconduct, we consider "the nature of the violations, protection of the public, deterrence of similar misconduct by others, the lawyer's fitness to practice, and [the court's] duty to uphold the integrity of the profession in the eyes of the public." We also consider aggravating and mitigating circumstances present in the disciplinary action.

*Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Honken*, 688 N.W.2d 812, 820 (Iowa 2004) (alteration in original) (quoting *Comm. on Prof'l Ethics & Conduct v. Gill*, 479 N.W.2d 303, 306 (Iowa 1991) (first quote); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D'Angelo*, 619 N.W.2d 333, 338 (Iowa 2000) (second quote)).

Aggravating factors include a prior reprimand of Gailey for engaging in conduct involving dishonesty, fraud, deceit, and misrepresentation when he falsely advised an adverse party in a deposition that he had a tape recording of a prior conversation with that party. Another aggravating factor is a previous private admonishment for making an extrajudicial statement regarding a pending criminal matter concerning his two sons.

We have previously given attorneys a public reprimand when the attorneys communicated with an adverse party who is represented by counsel when the attorneys did not have permission from counsel to communicate with the adverse party. *See Box*, 715 N.W.2d at 765

(finding an attorney with no prior disciplinary record should receive a public reprimand where his communication with a represented client resulted in substantial harm); *Comm. on Prof'l Ethics & Conduct v. Hoffman*, 402 N.W.2d 449, 451 (Iowa 1987) (holding lawyer's writing nine intemperate letters, some to persons known to be represented by counsel, warranted public reprimand).

However, this case is more serious than merely communicating with an adverse party, given our finding that Gailey aided and abetted his son in violating the no-contact order and offered Dawn an inducement to testify that is prohibited by law. The fact Gailey was helping his family is not an excuse. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Thompson*, 595 N.W.2d 132, 134 (Iowa 1999) (stating court not swayed by attorney's argument that his actions were those of a concerned father, not an attorney, and therefore should not be held to have reflected adversely on fitness to practice law).

Accordingly, we suspend Gailey's license to practice law in the State of Iowa for sixty days. This suspension applies to all facets of the practice of law. *See* Iowa Ct. R. 35.12(3). Gailey must comply with Iowa Court Rule 35.22 dealing with notification of clients and counsel. Costs of this action are taxed to Gailey pursuant to Iowa Court Rule 35.26. Absent an objection by the board and under the condition that Gailey has paid all costs assessed under rule 35.26, we shall reinstate Gailey's license to practice law on the day after the sixty-day suspension period expires. *See* Iowa Ct. R. 35.12(2).

**LICENSE SUSPENDED.**

All justices concur except Cady, J., who takes no part.