# IN THE SUPREME COURT OF IOWA

No. 11–0249

Filed June 24, 2011

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**KERMIT L. DUNAHOO,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

Grievance commission reports respondent has committed multiple ethical infractions and recommends two- to three-year suspension of respondent's license to practice law. **LICENSE SUSPENDED**.

Charles L. Harrington and Wendell J. Harms, Des Moines, for complainant.

Kermit L. Dunahoo, Dexter, pro se.

**WATERMAN, Justice.**

The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against Kermit L. Dunahoo alleging he violated seventeen Iowa Rules of Professional Conduct while working on six foreclosure and bankruptcy matters. The Grievance Commission of the Supreme Court of Iowa determined Dunahoo's conduct violated seven rules and recommended we suspend his license to practice law for two to three years. On our review, we find Dunahoo violated ten rules, and we suspend him from the practice of law for one year.

### I. Scope of Review.

"We review attorney disciplinary proceedings de novo." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 595 (Iowa 2011). We give respectful consideration to the commission's findings, but we are not bound by them. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Schmidt*, 796 N.W.2d 33, 36 (Iowa 2011). The board must establish attorney misconduct by a convincing preponderance of the evidence. *Id.* If the board establishes attorney misconduct, we can order a sanction more or less severe than the commission's recommended sanction. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wagner*, 768 N.W.2d 279, 282 (Iowa 2009).

### II. Findings of Fact.

The parties waived a hearing in this matter, and the commission decided the case based upon a joint stipulation filed by the board and Dunahoo. The parties stipulated to the facts for each of the board's six counts. A stipulation of facts is binding on the parties. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 803 (Iowa 2010). Based upon our review of the stipulation, we find the following facts.

Dunahoo has been a licensed attorney in Iowa since 1971. On July 8, 2009, Dunahoo retired and placed his license on inactive status. Previously, on March 20, 2008, the United States Bankruptcy Court for the Southern District of Iowa, pursuant to a matter unrelated to this proceeding, entered an order requiring Dunahoo to cease his bankruptcy practice in the southern district by May 31, 2008. The order also required Dunahoo to advise all clients affected by this order. He repeatedly violated this order.

**A. Darrell Scott and Jan Utecht-Scott (Count I).** On January 9, 2008, the Scotts hired Dunahoo to represent them in a pending foreclosure action filed against them, to analyze their debt situation, and advise them on bankruptcy alternatives if the foreclosure could not be averted. The Scotts paid Dunahoo a $500 advance fee, without any written fee agreement. Dunahoo decided Chapter 13 bankruptcy was the best course of action. He never talked with the foreclosing bank nor took any other step to delay or avoid the foreclosure action. The bank obtained a default judgment and decree of foreclosure on February 18.

Jan called Dunahoo on April 1, after the sheriff served the Scotts with a notice of sale. Dunahoo returned her call and informed her he would send her a packet of information to fill out and return, so he could file a bankruptcy petition to halt the imminent sheriff's sale. Two weeks later, Jan called again to schedule an appointment because the Scotts had not received the bankruptcy documents. The meeting was scheduled for May 5, but it never occurred. Jan instead spoke with Dunahoo's assistant, who mistakenly told Jan she needed to pay $1200 to file the bankruptcy petition that day. Dunahoo did not intend to charge the Scotts for this fee, as he had agreed his total fee would be $1000 with $500 paid in advance. Dunahoo never informed the Scotts

about the bankruptcy court's order to terminate his bankruptcy practice in the southern district.

The Scotts hired another attorney on May 5, who filed a bankruptcy petition for them the same day. Dunahoo refunded the $500 fee advance on May 9 from a check drawn on his "operating account."

**B. Jerrold Lanphier (Count II).** On May 7, 2007, Jerrold hired Dunahoo to represent him in a foreclosure proceeding and to file bankruptcy if necessary. Jerrold paid $700 in advance fees, without any written fee agreement. Dunahoo concluded bankruptcy was not in Jerrold's interest and took no steps to prevent the foreclosure. The bank obtained a default judgment and decree of foreclosure in August 2007. Dunahoo withdrew Jerrold's advance fee from his trust account, but provided no accounting.

**C. Christina Lanphier (Count III).** Christina hired Dunahoo to file a bankruptcy petition in early 2008. She agreed in advance to pay him $500 in two installments. Dunahoo never informed Christina of the bankruptcy court's March 20, 2008 order to cease his bankruptcy practice by May 31 in that district. Christina made her first installment payment of $300 on March 21, which was deposited in Dunahoo's trust account. Christina paid Dunahoo the remaining $200 on May 30. Dunahoo did not deposit the $200 payment into his trust account. He subsequently withdrew the other $300 from his trust account. No accounting was provided. Dunahoo never advised Christina she would be referred to another attorney on June 1. Christina filed her appearance for a small claims action, and on September 9, the court entered judgment against her. Christina hired another attorney to file a bankruptcy petition for her in December.

**D. Matthew Guerra (Count IV).** On November 9, 2007, Guerra agreed to pay Dunahoo $1500 plus court costs to represent him in a bankruptcy case. Guerra paid Dunahoo $1799 through four installments, with the last installment paid on December 31. Dunahoo withdrew $250 in fees on November 24, another $250 on January 30, 2008, and yet another $250 on February 12. He next withdrew $650 on March 18 and $100 on April 16. Dunahoo provided Guerra with no contemporaneous accounting or notice of withdrawal. Guerra asked for an accounting and a refund; Dunahoo provided neither.

On March 12, 2008, Dunahoo filed Guerra's bankruptcy petition in the United States District Court for the Southern District of Iowa. However, Guerra was domiciled in the Northern District for the United States District Court of Iowa. The next day the United States Trustee moved to change venue. On March 20, the southern district issued its order barring Dunahoo from practicing in that court as of June 1, 2008. Dunahoo never told Guerra about this order. Dunahoo filed Guerra's consent to change venue on April 8, and a first meeting of creditors was scheduled for May 19. Guerra believed Dunahoo would attend the meeting; instead, Dunahoo hired another attorney to attend the meeting. At the creditors meeting, the trustee expected Dunahoo to provide Guerra's 2006 and 2007 tax returns, as required by bankruptcy rules. Dunahoo neither sent the trustee the tax returns nor gave them to the new attorney. The trustee then moved to dismiss Guerra's petition for failure to provide income tax documents. The motion was granted on May 21.

Dunahoo and Guerra discussed refiling the petition, but Dunahoo advised Guerra to wait until his medical bills were finalized before

refiling. Guerra filed a bankruptcy petition with another attorney on March 25. Guerra paid that attorney $976.

**E. Jeffery Paxton (Count V).** Paxton received a notice of a bank foreclosure in early 2008, and he filed his demand for delay of sale in April. In May, Paxton hired Dunahoo to represent him in his foreclosure matter and to file a bankruptcy petition if necessary. Paxton paid $1000 in advance fees to Dunahoo on May 7. Dunahoo provided no written fee agreement, and he withdrew fees from his trust account without any notice or accounting. Dunahoo gave Paxton a target date for filing a bankruptcy petition that fell after his deadline to terminate his bankruptcy practice in that district. Dunahoo never informed Paxton of the bankruptcy court's order to cease his bankruptcy practice in the southern district before June 1.

On May 22, Dunahoo filed an answer and demand to delay sale in Paxton's foreclosure case. Dunahoo did not respond to the bank's subsequent motion for summary judgment in the foreclosure action. On October 9, the district court entered a foreclosure judgment and decree in favor of the bank. Dunahoo also failed to respond to the board's discovery request concerning his fee agreement, scope of representation, and fees and expenses in Paxton's representation.

**F. Terry Stogdill, Sr. (Count VI).** Stogdill hired Dunahoo in January 2008 to represent him in an anticipated collections case with the intent to delay collection several months until Stogdill retired and became judgment proof. Stogdill agreed to pay Dunahoo $1000 and paid Dunahoo $500 upfront, without any written fee agreement. On February 11, a creditor filed a collection action against Stogdill. Stogdill paid Dunahoo the remaining $500 later that month. Dunahoo never filed an appearance or an answer on Stogdill's behalf. On May 27, the

district court entered a default judgment against Stogdill. Dunahoo withdrew Stogdill's advance fee from his trust account and never provided Stogdill with an accounting or notice of withdrawal.

### III. Ethical Violations.

**A. Violation of Bankruptcy Court Order.** The board alleged Dunahoo's failure to comply with the bankruptcy court order violated rules 32:1.4(a), 32:1.16(a), and 32:8(4)(c). The commission found Dunahoo did not violate rule 32:1.4(a), but did violate rules 32:1.16(a) and 32:8.4(c).

Rule 32:1.4(a)(5) states "[a] lawyer shall . . . consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows the client expects assistance not permitted by . . . law." Dunahoo represented the Scotts, C. Lanphier, Paxton, and Guerra in bankruptcy-related matters through May 2008, without informing the clients of the bankruptcy court's March 20 order instructing him to cease his southern district bankruptcy practice by May 31. Dunahoo told Paxton the target date for his bankruptcy petition would be June—a filing Dunahoo would not have been legally authorized to make. Just days before June 1 Dunahoo also told Guerra he would refile Guerra's bankruptcy petition. We find Dunahoo failed to consult with his clients about relevant limitations on his conduct in violation of this rule.

Rule 32:1.16(a)(1) states a "lawyer shall not represent a client . . . if . . . the representation will result in violation of the Iowa Rules of Professional Conduct." Dunahoo had to cease his bankruptcy practice in the southern district by May 31. On May 7, Dunahoo agreed to represent Paxton in a foreclosure case and to file bankruptcy if warranted. Dunahoo accepted $1000 in payment. Dunahoo gave Paxton a target bankruptcy date that fell after to his deadline to terminate his

bankruptcy practice in the southern district. Paxton resided in that district. We find Dunahoo's scope of representation with Paxton violated the bankruptcy court order, and rule 32:1.16(a) required Dunahoo to limit his scope of representation to matters in which he could ethically represent Paxton. Dunahoo violated this rule.

Rule 32:8.4(c) states a lawyer commits professional misconduct by engaging "in conduct involving dishonesty, fraud, deceit, or misrepresentation." To violate this rule, the lawyer's misconduct must be done with a purpose to deceive. Iowa R. Prof'l Conduct 32:1.0(d) (defining "fraud" as "conduct that . . . has a purpose to deceive"). We find Dunahoo intentionally disobeyed the bankruptcy court's order for the purpose of deceiving his clients into believing he could continue to represent them in bankruptcy court. Accordingly, Dunahoo violated rule 32:8.4(c). *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Pracht*, 656 N.W.2d 123, 126 (Iowa 2003) (finding a lawyer's breach of court order to cease probate practice to be misconduct).

**B. Competence and Diligence.** The board alleged Dunahoo violated rules 32:1.1 and 32:1.3 that govern competence and diligence. The commission found Dunahoo violated rule 32:1.3, but not rule 32:1.1. Competent representation "includes inquiry into and analysis of the factual and legal elements of the problem" as well as "adequate preparation." Iowa R. Prof'l Conduct 32:1.1 cmt. 5.

> To establish an attorney has violated rule 32:1.1, the board must prove the attorney did not possess the requisite legal knowledge and skill to handle the case or that the attorney did not make a competent analysis of the factual and legal elements of the matter.

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Thomas*, 794 N.W.2d 290, 293 n.2 (Iowa 2011). The board has only shown instances of neglect, and we

find the board has not shown by a convincing preponderance of evidence that Dunahoo lacked the skill or knowledge to handle the bankruptcy and foreclosure matters at issue in this proceeding. Accordingly, Dunahoo did not violate this rule.

Rule 32:1.3 requires counsel to "act with reasonable diligence and promptness." This rule requires an attorney to handle matters in a "reasonably timely manner." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Johnson*, 792 N.W.2d 674, 678 (Iowa 2010). We find Dunahoo's failure to take any action in the Scotts' foreclosure matter, despite an imminent sheriff's sale, demonstrates a lack of diligence in violation of this rule.

**C. Communication.** The board alleged Dunahoo failed to properly communicate with his client in violation of rule 31:1.4(b), but the commission did not find a violation. Rule 32:1.4(b) states, "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding representation." Dunahoo stipulated that he "did not effectively communicate to Christina the nature and scope of his representation." Christina filed a motion on her own behalf asking the court to "stop the money judgment" because "my lawyer skipped out on me." We find the stipulated factual concession and attached exhibit demonstrate Dunahoo did not communicate with Christina "to the extent reasonably necessary to permit [her] to make informed decisions." His omission violated rule 32:1.4(b).

**D. Trust Account and Accounting.** The board alleged Dunahoo violated rules 32:1.15(a), (c), and (f), which incorporate Iowa Court Rules 45.7(3), 45.7(4), 45.9(2), and 45.10(3). The commission found Dunahoo only violated rule 32:1.15(f). We address these rules together because they all apply to Dunahoo's handling of client funds. *Netti*, 797 N.W.2d at 602.

Rule 32:1.15 reads in relevant part:

> (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation.
>
> . . . .
>
> (c) A lawyer shall deposit into a client trust account legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred.
>
> . . . .
>
> (f) All client trust accounts shall be governed by chapter 45 of the Iowa Court Rules.

Iowa Court Rule 45.7(4) requires attorneys to notify their clients in writing and provide contemporaneous accounting when the attorney withdraws fees from the trust account. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Piazza,* 756 N.W.2d 690, 698 (Iowa 2008) (noting attorneys accepting fee advances must deposit fees into trust account and provide contemporaneous accounting for withdrawals).

Dunahoo violated rule 32:1.15(f) and rule 45.7(4) by failing to provide any contemporaneous accounting or notice to these clients when he withdrew funds from their trust accounts. The record, however, does not support by a convincing preponderance of the evidence that Dunahoo violated either rule 32:1.15(a) (prohibiting comingling) or (c) (requiring fees to be earned). The only evidence Dunahoo comingled funds was the stipulation he paid the Scotts' refund from an "operating account," not a client trust account. We find the record lacks sufficient detail to discern the amount or type of work Dunahoo performed before withdrawing fees from his trust account in these matters.

**E. Fees.** The board alleged Dunahoo violated rules 32:1.5(a) and (b), which govern the setting of fees. The commission found Dunahoo violated only subpart (b). Rule 32:1.5(a) prohibits attorneys from making an agreement for or collecting an unreasonable fee and lists eight factors to determine "reasonableness." The record contains insufficient evidence Dunahoo charged or collected objectively unreasonable fees for the services he agreed to render. The board also presented little evidence as to the work Dunahoo performed in these matters. The board has not established by a convincing preponderance of the evidence the fees were unreasonable. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cannon,* 789 N.W.2d 756, 759–60 (Iowa 2010) (finding attorney who plagiarized a brief did not charge an unreasonable fee because the board did not present evidence showing the attorney failed to earn the fee).

Rule 32:1.5(b) requires the attorney to communicate with the client, preferably in writing, "[t]he scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible." Dunahoo stipulated he did not have a written fee agreement in five of the six counts. He also stipulated to not effectively communicating the basis or rate of his fee to the Lanphiers, Paxton, and Stogdill. The record contains no evidence that rebuts this stipulation. *See Gailey,* 790 N.W.2d at 803–04 (noting we treat stipulations to rule violations like settlement agreements and enforce the stipulation unless "unreasonable, against good morals, or contrary to sound public policy"). Also, contrary to Dunahoo's original fee promise to the Scotts, his assistant told the Scotts they owed Dunahoo another $1200 if they wanted to file a bankruptcy petition that day to stop the imminent sale of their property. We find Dunahoo violated this rule.

**F. Candor and Fairness.** The board alleged Dunahoo violated rules 32:3.3(a) and 32:3.4(c), relating to candor and fairness. The commission found Dunahoo violated rule 32:3.3(a), but not rule 32:3.4(c). Rule 32:3.3(a) prohibits an attorney from "knowingly" making "a false statement of fact or law to a tribunal or [from] fail[ing] to correct a false statement of material fact . . . previously made." "Knowingly" is defined as "actual knowledge of the fact in question" and can "be inferred from circumstances." Iowa R. Prof'l Conduct 32:1.0(f). Dunahoo filed Guerra's bankruptcy petition in the southern district, where Dunahoo's office is located. Dunahoo certified Guerra had been domiciled in the southern district for 180 days. At the time of filing, Dunahoo knew Guerra resided in the northern district. On our de novo review, we find Dunahoo's venue error was intentionally made for his own convenience. We find Dunahoo violated rule 32:3.3(a).

Rule 32:3.4(c) is entitled "Fairness to opposing party and counsel," and the rule states a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal." The comments to the rule suggest its purpose is to ensure "[f]air competition in the adversary system" through proper adherence to discovery and evidence rules. *Id.* r. 32:3.4 cmt. 1. Dunahoo violated the bankruptcy court order by failing to inform the Scotts, Guerra, C. Lanphier, and Paxton of the order to cease his bankruptcy practice by May 31, 2008. The board, however, did not establish Dunahoo's violation of the order unfairly disadvantaged opposing counsel. Therefore, we find this rule was not violated.

**G. Supervision of Nonlawyers.** The board alleged Dunahoo failed to adequately supervise his subordinates in violation of rule 32:5.3(b). The commission found no rule violation. Rule 32:5.3(b) requires a lawyer with "direct supervisory authority over the nonlawyer [to] make

reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer." While Dunahoo's subordinate did incorrectly inform the Scotts they owed an additional $1200 to file their bankruptcy petition, the conversation occurred during a phone call initiated by the Scotts. It seems plausible the subordinate simply made a mistake that was not a direct consequence of inattentive instruction or supervision by Dunahoo. We find the record contains insufficient evidence Dunahoo failed to make "reasonable efforts" to prevent this incorrect billing communication.

**H. Failure to Respond to Disciplinary Authority.** The board alleged Dunahoo violated rule 32:8.1(b) by failing to respond to the board's discovery request, and the commission found a violation. Rule 32:8.1(b) states a lawyer shall not "knowingly fail to respond to a lawful demand for information from . . . [a] disciplinary authority." "Knowingly" is defined as "actual knowledge of the fact in question" and "may be inferred from circumstances." *Id.* r. 32:1.0(f). On August 31, 2009, the board asked Dunahoo to provide the board with documentation concerning the scope of representation and fee agreement with Paxton. We find Dunahoo was aware of the board's request and knowingly failed to comply. Dunahoo's failure to respond to the board's inquiry violates this rule. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Carpenter*, 781 N.W.2d 263, 269 (Iowa 2010).

**I. Misconduct.** Finally, the board alleged Dunahoo's conduct violated rule 32:8.4(a) and (d). The commission found Dunahoo violated only subpart (a). Rule 32:8.4(a) states it is "misconduct" to "violate or attempt to violate the Iowa Rules of Professional Conduct." We have previously held that this rule does not create a separate ethical

infraction; therefore, we give it no further consideration. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 769 (Iowa 2010)

Rule 32:8.4(d) states it is professional misconduct to "engage in conduct that is prejudicial to the administration of justice." Conduct is prejudicial to the administration of justice only when it impedes " 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' " *Id.* at 768 (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 373 (Iowa 2005)). Dunahoo knowingly filed Guerra's bankruptcy petition in the wrong district, forcing the trustee to file a motion to transfer venue and wasting the court's time. Dunahoo also never provided the trustee with Guerra's tax documents before or during the creditors meeting, causing the trustee to file a motion to dismiss, which the court granted. Dunahoo's conduct wasted judicial resources and was prejudicial to the administration of justice in violation of rule 32:8.4(d).

**IV. Sanction.**

We do not have standard sanctions for particular types of misconduct. *Johnson*, 792 N.W.2d at 681–82. Although prior cases are instructive, we determine an appropriate sanction based upon each case's unique circumstances. *Id.* In crafting a sanction

> "we consider the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances."

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Casey*, 761 N.W.2d 53, 61 (Iowa 2009) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008)).

We have suspended an attorney's license for substantial periods of time when the attorney's neglect is compounded by other serious offenses such as violation of court orders. *See, e.g., Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy*, 728 N.W.2d 806, 816 (Iowa 2007) (suspending the attorney indefinitely with no possibility of reinstatement for eighteen months for neglect compounded with the attorney's refusal to comply with court orders and misrepresentations to the court and clients). In *Pracht*, an attorney was suspended for one year because the attorney neglected his client in a probate matter after being ordered by the court to cease representing clients in probate matters due to his previous neglect. *Pracht*, 656 N.W.2d at 126.

Dunahoo has a pattern of disciplinary problems within the ten years leading up to the events underlying this disciplinary action. This court publicly reprimanded Dunahoo in 1999 and again in 2007. The board admonished Dunahoo for rule violations three other times in the last decade. Dunahoo's disciplinary problems are an aggravating factor. *Howe*, 706 N.W.2d at 381 (noting a pattern of misconduct is an aggravating factor).

Dunahoo candidly admits he "desperately hung on too long" to his practice. He voluntarily placed his law license on inactive status in 2009. Our cases establish an attorney's "voluntarily ceasing the practice of law" is a mitigating factor. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Conroy*, 795 N.W.2d 502, 506–07 (Iowa 2011). While illness does not excuse misconduct, we have repeatedly held illness can be a mitigating factor with respect to discipline. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser*, 782 N.W.2d 147, 154 (Iowa 2010); *accord Carpenter*, 781 N.W.2d at 271. During the time of these violations, Dunahoo was suffering from advanced diabetes, high blood pressure, extreme stress,

early-onset dementia, tremors, and restless leg syndrome. He also underwent several eye surgeries. Finally, he was attempting to wind down his practice.

After careful consideration of the record, prior cases, and Dunahoo's unique circumstances, we conclude a one-year suspension is appropriate.

## V. Conclusion.

We suspend Dunahoo's license to practice law in this state indefinitely with no possibility of reinstatement for one year. Pursuant to Iowa Court Rule 35.12(3), the suspension applies to all facets of the practice of law. Costs of this action are assessed against Dunahoo pursuant to rule 35.26(1).

**LICENSE SUSPENDED**.