# IN THE SUPREME COURT OF IOWA

No. 13–1966

Filed May 30, 2014

**IOWA SUPREME COURT ATTORNEY DISCIPLINARY BOARD,**

Complainant,

vs.

**KATHRYN S. BARNHILL,**

Respondent.

On review of the report of the Grievance Commission of the Supreme Court of Iowa.

The grievance commission reports respondent committed ethical violations and recommends a six-month suspension of the attorney's license. **LICENSE SUSPENDED.**

Charles L. Harrington, Wendell J. Harms, and David J. Grace, Des Moines, for complainant.

Sharon L. Soorholtz Greer and Thomas L. Hillers of Cartwright, Druker & Ryden, Marshalltown, for respondent.

**WIGGINS, Justice.**

This matter comes before us on a report of a division of the Grievance Commission of the Supreme Court of Iowa. The Iowa Supreme Court Attorney Disciplinary Board brought a complaint against the respondent, Kathryn Barnhill, alleging multiple violations of our ethics rules based on her actions in four separate legal matters. The commission found multiple violations occurred and recommended a six-month suspension of Barnhill's license to practice law. We are required to review the commission's report. *See* Iowa Ct. R. 35.11(1). Based on our de novo review, we agree with the commission that the Board established by a convincing preponderance of the evidence Barnhill violated our rules. However, we disagree with the recommended suspension and find a sixty-day suspension is the appropriate sanction.

**I. Scope of Review.**

We review attorney disciplinary proceedings de novo. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Stowe*, 830 N.W.2d 737, 739 (Iowa 2013). The Board must prove the attorney's ethical misconduct by a convincing preponderance of the evidence. *Id.* "A convincing preponderance of the evidence is more than a preponderance of the evidence, but less than proof beyond a reasonable doubt." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. McCarthy*, 814 N.W.2d 596, 601 (Iowa 2012). This places a burden on the Board that is higher than the burden in civil cases but lower than the burden in criminal matters. *Stowe*, 830 N.W.2d at 739. We respectfully consider the commission's recommendations; however, they are not binding upon us. *Id.*

When the parties enter into a stipulation in a disciplinary case, we rely on the stipulation to determine facts. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Gailey*, 790 N.W.2d 801, 804 (Iowa 2010). "Nowhere

in our rules have we given the parties the authority to determine what conduct constitutes a violation of our ethical rules or what sanction an attorney should receive for such a violation." *Id.* Thus, we use the stipulation to determine the facts and then we determine whether the facts establish a violation of our rules. *Id.*

## II. Findings of Fact.

Using the stipulation of the parties with our review of the record, we make the following findings of fact. We admitted Barnhill to practice law in Iowa in 1989. The ethical complaints against her arise out of four separate factual matters.

**A. The Jerry's Homes Matter.** The Jerry's Homes matter involves claims Barnhill violated conflict of interest rules, made misrepresentations, and improperly included a defendant in the action to harass the defendant, among other allegations. In March 2001, Barnhill filed a class action lawsuit against a roofing company that manufactured shingles and an individual who served as the company's president and chief executive officer. The lawsuit class included a construction company, Jerry's Homes, as well as homeowners who lived in houses built by Jerry's Homes, among other plaintiffs. Barnhill had represented Jerry's Homes in prior small claims cases brought by other homeowners. Barnhill alleged she met with the homeowners in the class action lawsuit, explained the potential conflict of interest, and the homeowners signed written waivers of the potential conflict. The district court certified the class but certified a subclass of members, stating Barnhill could only represent class members who did not have shingles installed by Jerry's Homes.

Barnhill made statements to the district court and in her appeal brief that all members of the class actually reviewed the roofing

company's promotional materials and acted in reliance on these materials when purchasing shingles. These statements were subsequently determined to be false.

Barnhill included the corporate officer as a defendant in the action. Barnhill pleaded causes of action sounding in breach of express warranty, breach of implied warranty, fraudulent misrepresentation, negligent misrepresentation, and rescission. The court of appeals ultimately granted summary judgment to the corporate officer on all claims. The corporate officer filed a motion for sanctions against Barnhill and the named plaintiffs. The district court awarded sanctions against Barnhill. *See Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 279–80 (Iowa 2009) (affirming the award of sanctions against Barnhill for $25,000).

**B. The Williams Matter.** The Williams matter involves a claim of fraudulent misrepresentation and assorted trust account violation claims. Barnhill's law office manager worked for Barnhill for more than sixteen years. This employee had authority to sign Barnhill's name to the trust account checks and the business account checks. Prior to the Williams matter, the employee charged approximately $55,000 of personal expenses to the law firm's American Express account without authorization. Barnhill discovered the embezzlement in 2005 and agreed to settle the embezzlement debt. Barnhill was aware the employee continued to sign trust account checks, but believed the employee would never take client funds.

In the fall of 2005, the employee began a new embezzlement scheme. At around the same time, Barnhill took on a new client, Denise Williams. Barnhill began using the trust account to collect Williams's income and to pay Williams's bills. Williams delivered her financial records, unpaid business and personal bills, business income, and some

child support payments to Barnhill. Barnhill authorized the employee to pay Williams's business and personal bills from the money deposited in the trust account. Barnhill did not provide written receipts for these transactions prior to February 2007 and did not provide contemporaneous written notice or an account of disbursements.

The employee wrote at least one check payable to herself from the trust account during this time. Throughout the time Williams was Barnhill's client, there were discrepancies in the trust account regarding Williams's funds. Barnhill determined the employee had stolen money from Barnhill by forging checks and making unauthorized online transfers. Barnhill eventually informed Williams the employee had been stealing money, and Barnhill gave Williams the trust account records so that Williams could determine whether the employee took any of Williams's money from the trust account. Barnhill refunded $1363.50 to Williams when Williams terminated Barnhill as her attorney.

Williams filed a lawsuit against Barnhill, Barnhill's law firm, and the employee. Following trial, the jury determined Williams proved by a preponderance of clear, convincing, and satisfactory evidence that Williams proved her claim of fraud against Barnhill. The district court awarded a monetary loss to Williams against Barnhill for $53,895 in actual damages and $10,000 in punitive damages.

**C. The Public Safety Group, Inc. Matter.** The Public Safety Group, Inc. (PSG) matter involves claims of knowingly disobeying the order of a tribunal and professional misconduct, among other allegations. In August 2005, Barnhill represented PSG as a defendant in a lawsuit. PSG filed a counterclaim in the action. PSG was successful in defending the suit and recovered a substantial sum on its counterclaim.

The district court entered judgment in favor of PSG. PSG assigned its interest in the judgment to another person.

The plaintiffs in the original action alleged the IRS filed an action to levy upon the judgment, and the IRS levy motivated PSG to assign its interest in the judgment. The plaintiffs alleged Barnhill did not notify the district court of the IRS levy or the assignment of interest, and that neither the IRS nor the assignee had the opportunity to intervene in the appeal.

We issued an order on May 2, 2007, requiring Barnhill, counsel for PSG, to serve a copy of the order containing notification of the assignment on the assignee and the IRS and to provide proof of service to our clerk and opposing counsel. Barnhill did not comply with this order. Subsequently, Barnhill filed a motion to intervene in the appeal on behalf of another entity and claimed opposing counsel had not complied with the May 2, 2007 order to serve the assignee or the IRS. Opposing counsel filed a response, pointing out Barnhill's failure to comply with our court order.

We issued a second order in January 2008, ordering Barnhill to serve both the second order and the previous order on the assignee and the IRS. Barnhill did not comply with the second order. On June 30, we then authorized opposing counsel to serve the orders on the assignee and the IRS because Barnhill failed to do so. Barnhill served the orders on the assignee on July 2 and on the IRS on July 8.

**D. The Everly Matter.** The Everly matter involves claims of failure to provide competent representation and alleges Barnhill brought a frivolous claim, among other allegations. On May 26, 2006, Barnhill filed a petition and application for writ of certiorari on behalf of Steve Everly, a resident and taxpayer of a school district, against Musco Sports

Lighting, Inc. (Musco), a school district, and the superintendent of the school district. Musco was a product supplier for the successful bidder in a construction project involving the school district. After numerous filings, Barnhill filed an amended petition. She did not name the school district or the superintendent of the school district as defendants in the amended petition, leaving Musco as the only defendant. The district court ultimately dismissed the petition, finding the taxpayer could not maintain suit against Musco alone and imposed sanctions against Barnhill. Barnhill appealed the ruling. Barnhill argued her client had standing, Musco was the proper party, and the district court erred in sanctioning her. The court of appeals affirmed the dismissal and sanctions, but disagreed the taxpayer did not have standing.

We granted further review and affirmed the dismissal of the petition. We determined the district court should not have sanctioned Barnhill for originally including Musco in the petition because a reasonably competent attorney could make a good faith argument Musco was a proper party to the original suit provided the school district and the superintendent were parties to the suit. However, we decided the district court did not abuse its discretion in sanctioning Barnhill for her actions in maintaining the suit against Musco after she dismissed the school district and the superintendent from the suit. *See Everly v. Knoxville Cmty. Sch. Dist.*, 774 N.W.2d 488, 495 (Iowa 2009) (remanding the case to the district court to assess sanctions based upon the fact Barnhill continued the lawsuit after she dismissed the school district and the superintendent from the suit).

### III. Disciplinary Proceedings.

Although Barnhill's alleged actions in these four legal matters occurred between 2001 and 2009, the Board did not file a complaint

until June 8, 2012. The parties waived a formal hearing and agreed for the commission to decide the case based on the parties' stipulation. The parties stipulated to a nonbinding recommendation of a sixty-day suspension of Barnhill's law license. The commission determined Barnhill violated multiple ethics rules and recommended we suspend Barnhill's license with no possibility of reinstatement for six months.

## IV. Ethical Violations.

The Board alleges Barnhill violated numerous rules under the Iowa Rules of Professional Conduct and the Iowa Code of Professional Responsibility for Lawyers. The Iowa Rules of Professional Conduct took effect on July 1, 2005, replacing the Iowa Code of Professional Responsibility for Lawyers. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Curtis*, 749 N.W.2d 694, 696 n.1 (Iowa 2008). The Iowa Rules of Professional Conduct governs all conduct occurring after its effective date. The Iowa Code of Professional Responsibility for Lawyers governs the allegations regarding the Jerry's Homes matter because Barnhill's conduct in that matter occurred prior to July 1, 2005. In discussing the alleged rule violations, we will take each rule individually and apply it to the applicable matters.

**A. Misrepresentation: DR 1–102(A)(4)**. This rule states an attorney shall not "[e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa Code of Prof'l Responsibility DR 1–102(A)(4). To prove a violation of this rule, we have held the Board must establish "(1) that [the attorney's] statement was not true, and (2) that [the attorney] made the statement with actual knowledge of falsity or in reckless disregard for whether the statement was true or not." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Weaver*, 750 N.W.2d 71, 84 (Iowa 2008). Negligent misrepresentation does not violate this rule. *Iowa*

*Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Grotewold*, 642 N.W.2d 288, 293 (Iowa 2002). A lawyer's honesty regarding purely personal matters may remain free from scrutiny. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Plumb*, 546 N.W.2d 215, 217 (Iowa 1996).

We previously distinguished between an attorney's reckless disregard for the truth, which would violate this rule, and an attorney's negligent misrepresentation, which would not violate this rule. In *Grotewold*, an attorney represented to the district court he had filed tax returns on an estate. *Grotewold*, 642 N.W.2d at 291. When the district court questioned him on the absence of certain tax documents in the court file, the attorney admitted it was likely the IRS had not received one of the tax returns and stated that he had filed new tax returns. *Id.* This information was false. *Id.* We determined the attorney violated this rule. *Id.* at 293. We recognized "misstatements resulting from oversight or haste do not constitute misrepresentations" in violation of this rule, however misinformation to the court based on a hope or intention that tasks would eventually be completed showed a casual, reckless disregard for the truth. *Id.* We have frequently found violations of this rule for an attorney's misrepresentations to clients and the court about the status of certain activities the attorney is supposed to complete. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Joy*, 728 N.W.2d 806, 814 (Iowa 2007) (finding an attorney violated this rule when he misrepresented to the court only minimal work needed to be completed on certain estates and misinformed his clients about the status of their tax returns); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Bjorklund*, 725 N.W.2d 1, 8 (Iowa 2006) (finding an attorney violated this rule when he misrepresented to the court that he had ordered a transcript); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Daggett*, 653 N.W.2d 377, 380 (Iowa 2002) (finding

an attorney violated this rule when he stated he had filed an application for reinstatement but had not in fact done so).

Barnhill repeatedly stated to opposing counsel and the district court the plaintiffs in the Jerry's Homes matter actually reviewed the roofing company's promotional materials and acted in reliance on these materials when purchasing shingles. However, the evidence shows the majority of class members did not see or rely on these materials. The district court noted even when it confronted Barnhill and asked for evidence of the class members' reliance on these representations, Barnhill made false statements. Barnhill's appeal brief in this matter also contained false statements. Barnhill concedes these representations were false, but argues she was being a zealous advocate.

Zealous advocacy does not justify violating our disciplinary rules. Rather, an attorney must confine her zeal within the boundaries of our disciplinary rules. *Comm. on Prof'l Ethics & Conduct v. Hurd*, 360 N.W.2d 96, 104 (Iowa 1984). Here, the facts do not indicate haste or oversight led to Barnhill's comments that would suggest mere negligent misrepresentations. Rather, Barnhill's conduct shows her hope the facts would be something other than what they were. Barnhill's actions show a reckless disregard for the truth of the statements she made; thus, we find the Board proved Barnhill violated this rule.

**B. Knowingly Making a False Statement: DR 7–102(A)(5).** This rule states an attorney shall not "[k]nowingly make a false statement of law or fact" in the representation of a client. Iowa Code of Prof'l Responsibility DR 7–102(A)(5). We have recognized the word "knowingly" in the context of this rule requires actual knowledge, and we may infer an attorney's knowledge from the circumstances. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ouderkirk*, 845 N.W.2d 31, 45 (Iowa 2014). We have

consistently found a violation of this rule when we have determined the attorney's actions could only have been done deliberately. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelsen*, 807 N.W.2d 259, 266 (Iowa 2011) (finding a violation of this rule when an attorney stated he would deposit certain funds into his trust account, while knowing that not only had he sent these funds to other individuals, but that he would continue to do so with future checks); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Lesyshen*, 585 N.W.2d 281, 286 (Iowa 1998) (finding a violation of this rule when an attorney forged her client's signature and falsely notarized the signature); *Comm. on Prof'l Ethics & Conduct v. O'Donohoe*, 426 N.W.2d 166, 168–69 (Iowa 1988) (finding a violation of this rule when an attorney deliberately backdated a deed).

We disagree the Board met its burden to prove Barnhill violated this rule. Barnhill's concession in her brief that she made false statements does not show Barnhill had actual knowledge her statements were false at the time. Rather, as the district court stated, "[I]t was as though Barnhill said whatever needed to be said at each step to just get past the moment, whether there was a legitimate basis for saying it or not." *Barnhill*, 765 N.W.2d at 278. This shows a reckless disregard for the truth, but does not show Barnhill could only have acted deliberately. Thus, we find the Board did not meet its burden to prove Barnhill violated this rule.

**C. Other Conduct Adversely Reflecting on the Fitness to Practice Law: DR 1–102(A)(6).** This rule states an attorney shall not "[e]ngage in any other conduct that adversely reflects on the fitness to practice law." Iowa Code of Prof'l Responsibility DR 1–102(A)(6). We have previously recognized "[a]ny violation of the Code of Professional Responsibility necessarily reflects adversely on the fitness of an attorney

to practice law" and have noted our own hesitancy to find a violation of this rule depending on the degree of the attorney's noncompliance with the rule. *Comm. on Prof'l Ethics & Conduct v. Durham*, 279 N.W.2d 280, 285 (Iowa 1979). We do not look to the attorney's intent for this rule, but rather we look to the attorney's conduct and the surrounding circumstances. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Barry*, 762 N.W.2d 129, 138 (Iowa 2009). Our primary concern is with attorney conduct that lessens the public confidence in the legal profession. *Id.* We have previously found an attorney violates this rule when he or she acts truly egregiously and those actions negatively affect the public's perception of our profession. *See id.* (finding an attorney violated this rule when, as county attorney, his actions in treating certain persons favorably caused persons to question his sense of justice and he was ultimately removed from office for breaching his duties); *Weaver*, 750 N.W.2d at 79 (finding an attorney violated this rule when the attorney was arrested for second-offense drunk driving, lied to the police officer, and attempted to get out of the arrest).

The Board alleges Barnhill's general handling of the Jerry's Homes matter showed her lack of fitness to practice law in violation of this rule. We find on our review of the facts Barnhill's conduct in the Jerry's Homes matter rises to the level of egregious behavior to support this rule violation. Her conduct was so egregious the district court sanctioned her conduct by imposing a $25,000 sanction. On appeal, we affirmed the sanction. *See Barnhill*, 765 N.W.2d at 279. Thus, we find the Board proved Barnhill violated this rule.

**D. Acceptance of Employment: DR 2–109.** This rule states:

(A) A lawyer shall not accept employment on behalf of a person if it is known or it is obvious that such person wishes to:

(1) Bring a legal action, conduct a defense, or assert a position in litigation, or otherwise have steps taken merely for the purpose of harassing or maliciously injuring any person.

(2) Present a claim or defense in litigation that is not warranted under existing law, unless it can be supported by good faith argument for an extension, modification, or reversal of existing law.

Iowa Code of Prof'l Responsibility DR 2–109.

The commission concluded Barnhill did not violate DR 2–109(A)(1) or DR 2–109(A)(2) because the record did not show any evidence of the motives of Barnhill's clients in the Jerry's Homes matter. We agree. The facts do not indicate Barnhill knew or it should have been obvious to her that her clients were hiring her to bring the claims for the purpose of harassing or maliciously injuring someone. Further, it is not clear from the facts Barnhill's clients wanted to bring a claim that was not warranted under existing law in the absence of a good faith argument. Thus, we find the Board did not meet its burden to prove Barnhill violated this rule.

**E. Refusing to Accept or Continue Employment if the Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer: DR 5–105(B) and DR 5–105(C).** Both DR 5–105(B) and DR 5–105(C) are conflict of interest rules. DR 5–105(B) states

[a] lawyer shall decline proffered employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(D).

*Id.* DR–105(B).  DR 5–105(C) states

> [a] lawyer shall not continue multiple employment if the exercise of independent professional judgment on behalf of a client will be or is likely to be adversely affected by the representation of another client, except to the extent permitted under DR 5–105(D).

*Id.* DR 5–105(C).   DR 5–105(D) provides an attorney may represent clients that would ordinarily fit under these rules if each client "consents to the representation after full disclosure of the possible effect of such representation on the exercise of the lawyer's independent professional judgment on behalf of each" and it is clear the lawyer can adequately represent each client's interest.  *Id.* DR 5–105(D).

The attorney must make "a full disclosure of the possible consequences of dual representation."  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Clauss,* 711 N.W.2d 1, 3 (Iowa 2006).  We have recognized any person is entitled to complete loyalty from his or her legal counsel. *Comm. on Prof'l Ethics & Conduct v. Oehler,* 350 N.W.2d 195, 199 (Iowa 1984).  The burden falls on the attorney to establish he or she discharged his or her duties by ensuring the client either received independent advice or received advice from the attorney such as the client could have expected from an independent attorney.  *Id.*

The commission determined Barnhill violated this rule because the class she represented in the Jerry's Homes matter included both Jerry's Homes and homeowners with potential claims against Jerry's Homes. The commission further determined Barnhill did not receive proper conflict waivers from the class members.

We agree Barnhill violated this rule.  First, we recognize a potential conflict existed between the class members.   Barnhill previously represented Jerry's Homes against lawsuits from homeowners for

negligent shingle installment. Barnhill's representation of both Jerry's Homes and homeowners who had shingles installed by Jerry's Homes with this potential claim created a conflict.

Further, the record does not show either Barnhill's clients received independent advice or Barnhill provided the same sort of advice an independent attorney would have given. The evidence before us is insufficient to conclude Barnhill received waivers from all class members. Although Barnhill claims she met with the individual homeowners and received written waivers, Barnhill no longer had copies of these documents. The stipulation on this issue only agrees Barnhill *alleged* the homeowners signed waivers. It does not stipulate the homeowners *actually* signed the waivers. Further, although this rule does not require a written waiver, a valid waiver must show the client received a full explanation of the effect of the representation. *See* Iowa Code of Prof'l Responsibility DR 7–105(D). The most the record shows is affidavits from the named plaintiffs that each named plaintiff signed a conflict waiver. This does not show all class members signed a waiver. Finally, even if we assumed all class members signed a waiver, the record does not establish Barnhill made a full disclosure of possible issues with dual representation because we do not know what information the waiver contained. Thus, we conclude the Board proved Barnhill violated these rules.

**F. Actions that Serve Merely to Harass or Maliciously Injure Another: DR 7–102(A)(1).** This rule states an attorney shall not

> [f]ile a suit, assert a position, conduct a defense, delay a trial, or take other action on behalf of a client when the lawyer knows or when it is obvious that such action would serve merely to harass or maliciously injure another.

*Id.* DR 7–102(A)(1). We have previously found a violation of this rule when an attorney's conduct was a "dogged pursuit of substantial judgments in the face of compelling legal and factual evidence dictating a contrary course." *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Wanek*, 589 N.W.2d 265, 271 (Iowa 1999). In *Wanek*, an attorney represented a newspaper business filing for Chapter 13 reorganization. *Id.* at 266. The attorney sought discovery from three other newspaper businesses. *Id.* These businesses did not receive the informal discovery requests because the attorney mailed the requests to incorrect addresses. *Id.* The attorney subsequently mailed a motion and a court's order compelling discovery to incorrect addresses for these businesses. *Id.* at 267. The attorney then moved for sanctions against all three newspapers. *Id.*

Upon learning of the informal discovery requests, one of the businesses contacted the attorney to ask that, given the mailing error, the attorney withdraw the motion for sanctions. *Id.* at 267. The attorney declined. *Id.* It was later determined during this time the attorney had learned of the incorrect addresses and admitted he had received the returned incorrectly addressed mail. *Id.* at 268–69. Further, the attorney continued his course of action, even after his clients had settled their tax issues with the IRS and the attorney no longer needed the requested documentation from the businesses. *Id.* at 268.

We found the attorney violated DR 7–102(A)(1) for several reasons. While we recognized the attorney was originally justified in relying on certain principles of law to support his actions, we also recognized the facts subsequently changed. *Id.* at 270. At the point when the attorney disregarded mailings returned as undeliverable, ignored the businesses' claims the documents were not received, and failed to change his course

of action, the attorney was not acting as a reasonable attorney. *Id.* at 270–71. His failure to change his pursuit of the materials despite compelling legal and factual evidence indicating his position was incorrect violated this rule. *Id.* at 271.

Here, Barnhill's action in naming the corporate officer as a defendant in the Jerry's Homes matter was never justified and was legally and factually unreasonable. Accordingly, we agree with the Board that Barnhill's continued pursuit of the lawsuit against the corporate officer as a defendant in the Jerry's Homes matter showed Barnhill knew or it should have been obvious to her that her actions were merely harassing the corporate officer. Thus, we find the Board has proven Barnhill violated this rule.

**G. Advancing an Unwarranted Claim: DR 7–102(A)(2).** This rule states an attorney shall not

> [k]nowingly advance a claim or defense that is unwarranted under existing law, except that a lawyer may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law.

Iowa Code of Prof'l Responsibility DR 7–102(A)(2).

The Board alleged Barnhill advanced several contract claims in the Jerry's Homes matter against the corporate officer in his personal capacity and it was clear under existing law Barnhill could not sue this person with these claims. Barnhill continued to advance these claims for months. The district court found and we affirmed Barnhill's arguments did not support a good faith argument for an extension, modification, or reversal of existing law. *Barnhill*, 765 N.W.2d at 273–77. Thus, we find the Board has proven Barnhill violated this rule.

**H.  Conduct Prejudicial to the Administration of Justice: DR 1–102(A)(5).**  This rule states an attorney shall not "[e]ngage in conduct that is prejudicial to the administration of justice."  Iowa Code of Prof'l Responsibility DR 1–102(A)(5).  "The Board is not required to prove intent, knowledge, or motive to establish a violation of this rule," and we recognize there is no ordinary or typical conduct that violates this rule.  *Barry*, 762 N.W.2d at 137.  Rather, we recognize the commonality in our decisions considering this rule violation is that " 'the attorney's act hampered the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' "  *Id.* (quoting *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Steffes*, 588 N.W.2d 121, 123 (Iowa 1999)).

Though the Board was not required to prove intent, we previously recognized Barnhill's intent in keeping the corporate officer in the Jerry's Homes matter was to force or coerce a settlement.  *Barnhill*, 765 N.W.2d at 279.  Her persistence in advancing claims against the corporate officer for this purpose required multiple judges to consider these claims and ultimately dismiss these claims.  Barnhill's conduct in continuing to pursue these claims against the corporate officer triggered a series of unnecessary court proceedings.  Thus, we agree the Board proved Barnhill's conduct violated this rule

**I.  Communicating with One of Adverse Interest: DR 7–104(A)(1).**  This rule states in relevant part:

> (A) During the course of representing a client a lawyer shall not:

> (1) Communicate or cause another to communicate on the subject of the representation with a party known to be represented by a lawyer in that matter except with the prior consent of the lawyer representing such other party or as authorized by law.

Iowa Code of Prof'l Responsibility DR 7–104(A)(1). One purpose of this rule is to protect the represented person from the presumed imbalance in legal skills between the lawyer and the person. *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Herrera*, 626 N.W.2d 107, 113 (Iowa 2001). A second purpose is to prevent "efforts by lawyers in their representation of their clients to drive a wedge between other lawyers and their clients." *Id.* at 114. We have previously found an attorney violates this rule when he or she contacts a represented party without prior communication with the party's attorney regarding the subject of the representation. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Box*, 715 N.W.2d 758, 765 (Iowa 2006) (finding an attorney violated this rule when the attorney conducted a real estate transaction with a represented party without discussing the transaction with the party's attorney); *Comm. on Prof'l Ethics & Conduct v. Shepler*, 519 N.W.2d 92, 93 (Iowa 1994) (finding an attorney violated this rule when the attorney was aware an elderly woman with diminished capacity had a lawyer, had been instructed to contact the lawyer or the woman's daughter about business dealings, and subsequently had the woman sign subordination agreements in the absence of her attorney).

The Board alleged Barnhill violated this rule in relation to the Jerry's Homes matter. On our review of the facts, we find there is no indication Barnhill communicated with an opposing party in the absence or without the knowledge of that party's attorney. Thus, we find the Board has failed to prove Barnhill violated this rule.

**J. Trial Conduct: DR 7–106(A).** This rule states:

> (A) A lawyer shall not disregard or advise a client to disregard a standing rule of a tribunal or a ruling of a tribunal made in the course of a proceeding, but a lawyer

may take appropriate steps in good faith to test the validity of such rule or ruling.

Iowa Code of Prof'l Responsibility DR 7–106(A). We have primarily recognized an attorney violates this rule when an attorney fails to obey a court order. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. D'Angelo*, 710 N.W.2d 226, 234 (Iowa 2006) (finding an attorney violated this rule when he intentionally disregarded a court order to provide other parties with proper notice of a property sale); *Comm. on Prof'l Ethics & Conduct v. Zimmermann*, 522 N.W.2d 619, 620–21 (Iowa 1994) (finding an attorney violated this rule by failing to seek clarification of a court order).

The Board alleged Barnhill violated this rule in relation to the Jerry's Homes matter, and in particular that she violated Iowa Rule of Civil Procedure 1.413(1). *See* Iowa R. Civ. P. 1.413(1) (recognizing counsel's signature to various documents certifies counsel has read the document and to the best of counsel's knowledge, it is well grounded in fact).

The commission concluded Barnhill did not violate this rule because the record did not contain sufficient evidence. We agree the Board has failed to prove Barnhill violated this rule.

**K. Trial Conduct: DR 7–106(C)(1) and DR 7–106(C)(7).** This rule states an attorney shall not "[s]tate or allude to any matter that the lawyer has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence" when appearing in a professional capacity before the tribunal. Iowa Code of Prof'l Responsibility DR 7–106(C)(1). DR 7–106(C)(7) states an attorney shall not "[i]ntentionally or habitually violate any established rule of procedure or of evidence" when appearing in a professional capacity before the tribunal. *Id.* DR 7–106(C)(7).

We find the context of the rule indicates it was not intended to apply in the circumstances of the Jerry's Homes matter. This particular subsection of the rule discusses an attorney's conduct in the course of a trial, including conduct such as asking questions intended to degrade a witness and asserting personal opinions as to the credibility of a witness. *See id.* DR 7–106(C). Thus, it appears the rule is intended to discourage certain conduct when the lawyer appears before a tribunal in the course of a trial.

The commission determined Barnhill violated this rule in the Jerry's Homes matter for the same reasons she violated DR 7–102(A)(2). We decline to find Barnhill violated this rule. It does not appear Barnhill's conduct was habitual or an intentional violation during a trial proceeding. Thus, we find Barnhill did not violate either subsection of this rule.

**L. Safekeeping Property: Rule 32:1.15(a) and 32:1.15(f).** This rule provides:

> (a) A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property. Funds shall be kept in a separate account. Other property shall be identified as such and appropriately safeguarded. Complete records of such account funds and other property shall be kept by the lawyer and shall be preserved for a period of six years after termination of the representation.
>
> . . . .
>
> (f) All client trust accounts shall be governed by chapter 45 of the Iowa Court Rules.

Iowa R. of Prof'l Conduct 32:1.15(a), (f).

First, we find Barnhill violated rule 32:1.15(a). Barnhill did not safeguard Williams's money deposited in the trust account as this rule requires. She failed to supervise her employee properly in light of the

prior problems she had with that employee's handling of firm funds. Additionally, Barnhill did not check to see if the expenditures made out of the trust account were for legitimate expenses.

Second, we find Barnhill violated several rules in chapter 45 of the Iowa Court Rules. Iowa Court Rule 45.2(2) provides:

> Except as stated in this chapter or otherwise permitted by law or by agreement with the client, a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and shall promptly render a full accounting regarding such property.

Iowa Ct. R. 45.2(2). We find Barnhill violated this rule by not being able to give Williams a full accounting of her funds. Instead, Williams had to bring a lawsuit to determine what she was entitled to from the trust account.

Further, Iowa Court Rule 45.2(3) requires:

> *a.* A lawyer who practices in this jurisdiction shall maintain current financial records as provided in these rules and required by Iowa R. of Prof'l Conduct 32:1.15 and shall retain the following records for a period of six years after termination of the representation:
>
> (1) Receipt and disbursement journals containing a record of deposits to and withdrawals from client trust accounts, specifically identifying the date, source, and description of each item deposited, as well as the date, payee and purpose of each disbursement

*Id.* r. 45.2(3)(*a*)(1). Barnhill did not keep complete records of the source, date, or amount of Williams's income deposited into the trust account. The only accounting of Williams's money was the trust account register. There were no running balances kept in the trust account register, and Barnhill did not reconcile the trust account bank statements. Thus, we find the Board proved Barnhill violated this rule.

**M.** **Responsibilities Regarding Nonlawyer Assistants: Rule 32:5.3.** This rule provides:

> With respect to a nonlawyer employed or retained by or associated with a lawyer:

> (a) a partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

> (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

> (c) a lawyer shall be responsible for conduct of such a person that would be a violation of the Iowa Rules of Professional Conduct if engaged in by a lawyer if:

> (1) the lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

> (2) the lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

Iowa R. of Prof'l Conduct 32:5.3. We have previously recognized an attorney does not violate this rule when a nonlawyer makes a mistake that is not a direct consequence of the attorney's inattentive supervision or instruction. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dunahoo*, 799 N.W.2d 524, 534 (Iowa 2011).

The commission found Barnhill violated this rule based on the stipulations of fact. We agree Barnhill violated this rule in the Williams matter. Barnhill had supervisory authority over her employee and was aware her employee had previously embezzled money from the law firm when Barnhill entered into the arrangement with Williams. Barnhill

specifically authorized and directed the employee to pay Williams's bills and continued to allow the employee to sign Barnhill's name on trust account checks. The employee completed these acts without Barnhill's supervision. The employee subsequently wrote at least one check payable to herself from the trust account, and Barnhill eventually fired her for her unauthorized use of the law firm's line of credit.

We can hardly characterize the employee's conduct as a mere mistake. It was not accidental that the employee wrote a check to herself from the trust account. Nor can we characterize Barnhill's conduct as making reasonable efforts to ensure the employee's conduct was compatible with the professional obligations of a lawyer. Barnhill knew her employee had previously embezzled money from the law firm and let her continue to handle the funds without reasonable supervision.

We note it appears Barnhill attempted to supervise her employee. Barnhill purportedly limited her employee's authority to sign Barnhill's name on business checks to only circumstances when no other authorized signer was available. However, these measures were inadequate. Barnhill knew the employee continued to sign Barnhill's name on trust account checks. Barnhill also failed to keep a separate client ledger for Williams's funds, failed to ensure there was a running balance of the trust account register, failed to reconcile the bank statements, and utterly failed to have any idea what the employee was doing with Williams's funds. In fact, Barnhill subsequently gave the trust account records to Williams so that Williams could attempt to figure out whether the employee had taken any of Williams's money.

Barnhill failed to reasonably supervise her employee. Barnhill could have prevented the employee's conduct of stealing money from the trust account with reasonable supervision, particularly when she was

aware of her employee's prior embezzlement. Thus, we find the Board has proven Barnhill violated this rule.

**N. Professional Misconduct: Rule 32:8.4(c).** This rule states "[i]t is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit, or misrepresentation." Iowa R. of Prof'l Conduct 32:8.4(c). Regarding the Williams's matter, the commission found Barnhill violated this rule because the Board had proved issue preclusion under Iowa Court Rule 35.7(3). Rule 35.7(3) states:

> Principles of issue preclusion may be used by either party in a lawyer disciplinary case if all of the following conditions exist:
>
> *a.* The issue has been resolved in a civil proceeding that resulted in a final judgment, or in a criminal proceeding that resulted in a finding of guilt, even if the Iowa Supreme Court Attorney Disciplinary Board was not a party to the prior proceeding.
>
> *b.* The burden of proof in the prior proceeding was greater than a mere preponderance of the evidence.
>
> *c.* The party seeking preclusive effect has given written notice to the opposing party, not less than ten days prior to the hearing, of the party's intention to invoke issue preclusion.

Iowa Ct. R. 35.7(3).

The issue of Barnhill's fraudulent misrepresentation in the Williams matter was resolved in a civil trial. A jury determined Williams proved Barnhill committed fraud by clear, convincing, and satisfactory evidence. These facts meet the first two conditions of issue preclusion. *See Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. D.J.I.*, 545 N.W.2d 866, 877 (Iowa 1996) (barring an attorney from relitigating the issues of fraud and misrepresentation, among other issues, in a disciplinary case under the doctrine of issue preclusion). We also find the Board properly

gave Barnhill notice to meet the third condition. Therefore, we find the Board met its burden in proving issue preclusion applied to Barnhill's violation of this rule and that Barnhill violated this rule.

**O.  Advance Fee and Expense Payments: Rules 45.7(3) and 45.7(4).** The relevant portions of rule 45.7 state:

> 45.7(3) *Deposit and withdrawal.* A lawyer must deposit advance fee and expense payments from a client into the trust account and may withdraw such payments only as the fee is earned or the expense is incurred.
>
> 45.7(4) *Notification upon withdrawal of fee or expense.* A lawyer accepting advance fee or expense payments must notify the client in writing of the time, amount, and purpose of any withdrawal of the fee or expense, together with a complete accounting. The attorney must transmit such notice no later than the date of the withdrawal.

Iowa Ct. R. 45.7(3)–(4). Advance fee payments and advance expense payments have specific definitions under this rule. An advance fee payment is payment "for contemplated services that are made to the lawyer prior to the lawyer's having earned the fee." *Id.* r. 45.7(1). An advance expense payment is a payment "for contemplated expenses in connection with the lawyer's services that are made to the lawyer prior to the incurrence of the expense." *Id.* r. 45.7(2).

In the Williams matter, the commission concluded Barnhill did not violate rule 45.7(3) or rule 45.7(4). We agree. Our review of the facts shows the transactions of Williams's money into and out of the trust account related to the payment of Williams's expenses to third parties. These transactions did not relate to Barnhill's services, and thus do not meet the definition of either an advance fee payment or an advance expense payment. Thus, these rules do not apply to Barnhill's conduct. We find the Board did not meet its burden to prove Barnhill violated this rule.

**P. Diligence: Rule 32:1.3.** This rule states "[a] lawyer shall act with reasonable diligence and promptness in representing a client." Iowa R. of Prof'l Conduct 32:1.3. Accordingly, an attorney must handle a client matter in a reasonably timely manner. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 598 (Iowa 2011). We have found a violation of this rule when an attorney was slow to act on matters or did not keep clients properly informed on their cases. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Ackerman*, 786 N.W.2d 491, 495 (Iowa 2010) (holding attorney's dilatory handling of two estates violated this rule); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Earley*, 774 N.W.2d 301, 307 (Iowa 2009) (finding the attorney violated this rule when he failed to provide services and keep his clients informed about their cases).

Our review of the facts shows Barnhill failed to act promptly on our orders in the PSG matter concerning her service upon the assignee and the IRS. Even if we were to find Barnhill's failure to serve our May 2, 2007 order on the assignee and the IRS was due to her mistaken understanding of the order, we issued a second order in January 2008 requiring her to serve the assignee and the IRS. It was not until after we issued a third order ordering the opposing counsel to serve the assignee and the IRS that Barnhill served the assignee and the IRS. Thus, we find the Board met its burden to prove Barnhill violated this rule.

**Q. Expediting Litigation: Rule 32:3.2.** This rule states "[a] lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Iowa R. of Prof'l Conduct 32:3.2. An attorney violates this rule when he or she fails to appear at hearings and fails to participate in discovery. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Cunningham*, 812 N.W.2d 541, 548 (Iowa 2012). An attorney violates

this rule when the attorney uses tactics that unreasonably delay the litigation. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Knopf*, 793 N.W.2d 525, 530 (Iowa 2011). The Board is only required to prove the attorney's intent if the sole allegation is an attorney engaged in particular conduct for the purpose of frustrating the judicial process. *See id.* (recognizing the Board failed to prove an attorney's conduct violated this rule when it would be speculative to conclude the attorney's actions were solely for his convenience or for an unreasonable purpose).

In the PSG matter, the commission concluded Barnhill did not violate rule 32:3.2 because the evidence did not show Barnhill had the intent to slow the proceedings by failing to serve the court order or that her failure to serve the order was done for her convenience or for an unreasonable purpose. We agree with the commission. Thus, we find the Board did not meet its burden to prove Barnhill violated this rule.

**R.   Fairness to Opposing Party and Counsel: Rule 32:3.4(c).** This rule states "[a] lawyer shall not . . . knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Iowa R. of Prof'l Conduct 32:3.4(c). The attorney must have actual knowledge of the court order to violate this rule. *Cunningham*, 812 N.W.2d at 548. If an attorney has knowledge of the court order, and yet fails to obey the court order, the attorney violates this rule. *Id.*

The commission found Barnhill violated this rule by failing to serve our court orders after we issued numerous court orders in the PSG matter. We agree Barnhill had knowledge of our court orders and violated this rule by failing to comply with our May 2, 2007 order and subsequent orders. We find the Board proved Barnhill violated this rule.

**S.  Conduct Prejudicial to the Administration of Justice: Rule 32:8.4(d).**  This rule states "[i]t is professional misconduct for a lawyer to . . . engage in conduct that is prejudicial to the administration of justice."  Iowa R. of Prof'l Conduct 32:8.4(d).  Such conduct includes an attorney's actions that hamper " 'the efficient and proper operation of the courts or of ancillary systems upon which the courts rely.' "  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Templeton*, 784 N.W.2d 761, 768 (Iowa 2010) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Howe*, 706 N.W.2d 360, 373 (Iowa 2005)).  We have previously recognized an attorney violates this rule " 'when his [or her] misconduct results in additional court proceedings or causes court proceedings to be delayed or dismissed.' "  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Dolezal*, 841 N.W.2d 114, 124 (Iowa 2013) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rhinehart*, 827 N.W.2d 169, 180 (Iowa 2013)).

The commission found Barnhill violated this rule in both the PSG matter and the Everly matter.  On our review of the facts, we conclude Barnhill violated this rule when she caused delays in the PSG matter by not serving the orders and in the Everly matter by continuing to pursue an unwarranted claim.  Thus, we find the Board proved Barnhill violated this rule.

**T.  Competence: Rule 32:1.1.**  This rule states "[a] lawyer shall provide competent representation to a client.  Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."  Iowa R. of Prof'l Conduct 32:1.1.  The Board may prove an attorney violated this rule by the attorney's failure "to make a competent analysis of the factual and legal elements of a client's legal problem."  *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Wright*, 840 N.W.2d 295, 300 (Iowa 2013).  We recognized in *Everly*

that there was no authority to support Barnhill's position she could bring a certiorari action without naming a government entity. 774 N.W.2d at 495. We find Barnhill did not make a competent analysis of the facts and law when she continued the lawsuit after dismissing the government entity and the superintendent. In fact, we upheld sanctions against her for this conduct. *Id.* at 495–96. Therefore, we find the Board proved Barnhill violated this rule.

**U.  Declining or Terminating Representation: 32:1.16(a)(1).** This rule states in relevant part:

> (a) Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if:

> (1) the representation will result in violation of the Iowa Rules of Professional Conduct or other law.

Iowa R. of Prof'l Conduct 32:1.16(a)(1). We have found an attorney violates this rule when he or she helps a party with conduct that is a fraudulent transaction. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Engelmann*, 840 N.W.2d 156, 162–63 (Iowa 2013) (finding an attorney violated this rule when he misrepresented information in property transactions and failed to withdraw despite numerous opportunities to do so).

The stipulated facts do not allow us to find Barnhill violated this rule in the Everly matter. While we have found Barnhill's continued pursuit of the case against Musco violates other rules, it is not clear from the facts her clients asked her to engage in this conduct. Further, it does not appear Barnhill's conduct related to whether she could represent her clients. Rather, it appears the choices Barnhill made in her representation led to her violation of other rules. Thus, we find the Board did not meet its burden to prove Barnhill violated this rule.

**V.  Meritorious Claims and Contentions: Rule 32:3.1.**  This rule states in relevant part:

> A lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification, or reversal of existing law.

Iowa R. of Prof'l Conduct 32:3.1.  In analyzing this rule, we have previously identified the alleged offending conduct and analyzed whether there was legal authority to support the attorney engaging in this conduct.  *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Daniels*, 838 N.W.2d 672, 678 (Iowa 2013) (determining there was legal support for an attorney to file a petition for relief under the circumstances, thus the attorney did not violate this rule).

The conduct at issue here is Barnhill's continued pursuit of a lawsuit against Musco in the Everly matter after dismissing the school district and the superintendent from the lawsuit.  In *Everly*, we recognized we knew "of no authority for the proposition that a disappointed taxpayer [could] bring a certiorari action solely against a supplier to a successful bidder who allegedly improperly procured a government contract without naming a government entity."  774 N.W.2d at 495.  Thus, we conclude there was no authority to support Barnhill's conduct in pursuing the lawsuit.  Therefore, we find the Board has proven Barnhill violated this rule.

**W.  Candor Towards the Tribunal: Rule 32:3.3(a)(1).**  This rule states in relevant part, "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."  Iowa R. of Prof'l Conduct 32:3.3(a)(1).  The word "knowingly" has a specific

meaning under our rules. The Iowa Rules of Professional Conduct defines "knowingly" as "actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances." *Id.* r. 32:1.0(f). We will not infer an attorney made a misrepresentation knowingly simply because the misrepresentation occurred. *Netti*, 797 N.W.2d at 603. Further, it is not enough that an attorney admits he or she misrepresented facts or that the attorney filed a motion containing false information to prove the attorney violated this rule. *See id.*

For the Everly matter, the Board argues Barnhill falsely represented to the district court that Musco was in a contractual relationship with the school district. The commission concluded Barnhill did not violate this rule because Barnhill subsequently corrected the statement. Our review of the facts shows the Board has not met its burden to prove Barnhill knowingly made this misrepresentation. At most, Barnhill acknowledged her petition contained false information. Thus, we find the Board did not meet its burden to prove Barnhill violated this rule.

### V. Sanction.

To determine the appropriate sanction in an attorney disciplinary case, we consider

> "the nature of the violations, the attorney's fitness to continue in the practice of law, the protection of society from those unfit to practice law, the need to uphold public confidence in the justice system, deterrence, maintenance of the reputation of the bar as a whole, and any aggravating or mitigating circumstances."

*Iowa Supreme Ct. Disciplinary Bd. v. Marks*, 814 N.W.2d 532, 541 (Iowa 2012) (quoting *Iowa Supreme Ct. Disciplinary Bd. v. Ireland*, 748 N.W.2d 498, 502 (Iowa 2008)).

In this case, the Board and Barnhill stipulated to a nonbinding recommendation of a sixty-day suspension. The commission recommended a six-month suspension.

This case presents both mitigating and aggravating factors. Aggravating factors in this case include Barnhill's extensive legal experience, Barnhill's misconduct causing financial harm to Williams, Barnhill's multiple violations, and Barnhill's two prior admonitions from the Board.

Mitigating factors include Barnhill's involvement in pro bono work with the Polk County Bar Association Volunteer Lawyers Program, Barnhill's volunteerism at a halfway house and jail, and her activity in her community. Barnhill also acknowledged multiple violations through her stipulations. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Nelson*, 838 N.W.2d 528, 542 (Iowa 2013) ("An attorney's acknowledgment of ethical violations is a mitigating factor.").

Barnhill argues we should consider additional mitigating factors. She argues that since this conduct last occurred she has instituted practices to help manage her trust account. We agree corrective measures to address previous misconduct are a mitigating factor and that her effort to correct previous issues with her trust account is a mitigating factor. *See id.* at 543 (recognizing corrective measures such as improving accounting practices and employing additional help are mitigating factors).

Barnhill also requests that we consider the award of punitive damages in one of the matters and the previous sanctions imposed by the courts under Iowa Rule of Civil Procedure 1.413(1) in two of these matters as mitigating factors. In the Williams matter, the jury awarded a judgment against Barnhill in the amount of $53,895, as well as punitive

damages against Barnhill in the amount of $10,000. In the Jerry's Homes matter, the district court sanctioned Barnhill for $25,000. *Barnhill*, 765 N.W.2d at 279–80. We affirmed the district court's decision to sanction. *Id.* at 280. In the Everly matter, we affirmed sanctions in part. *Everly*, 774 N.W.2d at 495–96.

We have considered an attorney's interim suspension when determining the proper sanction for an attorney disciplinary matter. *See Iowa Supreme Ct. Att'y Disciplinary Bd. v. Powell*, 830 N.W.2d 355, 359–60 (Iowa 2013) (recognizing the commission recommended a public reprimand because the attorney had previously served a seven-month suspension, but ultimately concluding an additional suspension was necessary). A suspension promptly protects the public and upholds public confidence in our justice system. *See id.* at 360. Monetary sanctions, such as a requirement of only restitution, may convey attorneys have the ability to buy their way out of professional difficulties. *See D'Angelo*, 710 N.W.2d at 235 (recognizing a concern with allowing the public to believe an attorney may use financial means to address disciplinary problems).

Courts do not award punitive damages for restitution purposes. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416, 123 S. Ct. 1513, 1519, 155 L. Ed. 2d 585, 600 (2003) (recognizing a difference between compensating a person for a concrete loss and awarding punitive damages). The purpose of punitive damages is to punish a person for their civil wrongdoing and to protect the public by deterring the defendant and others from engaging in similar future conduct. *See McClure v. Walgreen Co.*, 613 N.W.2d 225, 232 (Iowa 2000). We have previously stated one of the primary goals of rule 1.413 "is to maintain a high degree of professionalism in the practice of law." *Barnhill*, 765

N.W.2d at 273. The rule prevents abusive filing by attorneys caused by professional incompetence. *Id.*

The primary goal of attorney discipline is to protect the public, not to punish the attorney. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Hauser,* 782 N.W.2d 147, 154 (Iowa 2010). Although punitive damages and attorney discipline have different purposes as to punishment, both have an element of protecting the public by deterring future conduct. Thus, where a court awarded punitive damages or sanctions against an attorney arising out of the same facts and transactions we deem unethical, we can consider the award of punitive damages or the levy of sanctions as mitigating factors.

We find all of Barnhill's violations to be serious. We have previously recognized that " 'honesty is the base line and mandatory requirement to serve in the legal profession.' " *Iowa Supreme Ct. Disciplinary Bd. v. McGinness,* 844 N.W.2d 456, 465 (Iowa 2014) (quoting *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Kallsen,* 814 N.W.2d 233, 239 (Iowa 2012)). In our cases involving similar conduct, we have imposed sanctions ranging from sixty days to revocation. *Cunningham,* 812 N.W.2d at 548–54 (imposing an eighteen-month suspension when an attorney failed to obey a court order, failed to contact his client, misrepresented to a client he had filed a petition, neglected clients, failed to appear at hearings and participate in discovery, and his conduct resulted in the court rescheduling proceedings); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Van Ginkel,* 809 N.W.2d 96, 102, 105, 111 (Iowa 2012) (concluding a sixty-day suspension was appropriate when the attorney made false statements to a tribunal, failed to perform necessary work on an estate, took early receipt of probate fees, and procrastinated on closing an estate for several years); *Dunahoo,* 799 N.W.2d at 531–35

(suspending an attorney's license for one year when the attorney intentionally disobeyed a court order, failed to take action in a foreclosure matter, failed to communicate with his client, failed to provide contemporaneous accounting or notice regarding trust account withdrawals, intentionally filed a petition in the wrong district, and wasted judicial resources); *Netti*, 797 N.W.2d at 598–607 (suspending an attorney's license for two years when the attorney failed to properly administer an estate, failed to handle estate proceedings and tax issues in a reasonably timely manner, did not keep his client informed or respond to client requests, did not give his client contemporaneous notice of withdrawals from the client trust account, misrepresented to the court he had authority to represent a client, and his conduct resulted in additional unnecessary proceedings); *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Rickabaugh*, 728 N.W.2d 375, 382 (Iowa 2007) (revoking an attorney's license when, among other ethical infractions, the attorney fabricated documents and forged a judge's signature); *Iowa Supreme Ct. Bd. of Prof'l Ethics & Conduct v. Isaacson*, 565 N.W.2d 315, 318 (Iowa 1997) (imposing a six-month suspension when an attorney committed fraud and failed to disclose potential conflicts of interest). We recently suspended an attorney's license for six months for falsifying certificates of service attached to discovery requests. *McGinness*, 844 N.W.2d at 460, 467.

We have considered all the factors in this case. These include the aggravating and mitigating factors and the overall nature of the violations, which primarily involve overzealousness and sloppy practices. We have also taken into account the extent to which courts have already punished Barnhill by levying sanctions and imposing punitive damages against her. Weighing all of these considerations, we believe the

appropriate sanction in this matter is a sixty-day suspension as stipulated by Barnhill and the Board.

## VI.  Disposition.

We suspend Barnhill from the practice of law for sixty days.  This suspension applies to all facets of the practice of law, including but not limited to advertising her services.  *See* Iowa Ct. R. 35.13(3).  Barnhill must also comply with Iowa Court Rule 35.23, addressing the notification of clients and counsel.  We tax the costs of this action to Barnhill, pursuant to Iowa Court Rule 35.27.  Absent an objection by the Board, we shall reinstate Barnhill's license to practice law on the day after the sixty-day suspension period expires.  *See* Iowa Ct. R. 35.13(2).

**LICENSE SUSPENDED.**

All justices concur except Appel, J., who takes no part.